BARRY *v.* DETROIT TERMINAL RAILROAD CO.

1. ACTION—BREACH OF UNION CONTRACT—SENIORITY RIGHTS.
    Action by switchman against railroad company for failure to
    rehire plaintiff after a layoff in disregard of plaintiff's
    seniority rights under his union's contract with defendant is
    essentially an action for breach of an express contract.

2. LIMITATION OF ACTIONS—BREACH OF UNION CONTRACT—SENIORITY
    RIGHTS.
    Switchman's cause of action, arising from employer's failure to
    rehire plaintiff according to seniority rights under its contract
    with union, which is shown by uncontroverted testimony to
    have arisen more than six years prior to date when action was
    commenced, was barred by the statute of limitations (3 Comp.
    Laws 1929, § 13976).

3. CONTRACTS—BREACH OF UNION CONTRACTS—SENIORITY RIGHTS—
    SWITCHMAN.
    Switchman's claim that defendant railroad company would not
    have breached union contract until it failed to give plaintiff
    notice of recall to employment was without merit.

4. LIMITATION OF ACTIONS—TOLLING OF STATUTE—FRAUDULENT CON-
    CEALMENT.
    Switchman who discovered in 1935 that defendant railroad com-
    pany had disregarded his seniority rights in the matter of re-
    employment in 1934 after a layoff may not apply two-year
    statute relative to fraudulent concealment of cause of action
    to toll running of six-year statute of limitations which had
    expired before action was commenced in 1940 (3 Comp. Laws
    1929, §§ 13976, 13983).

5. SAME—FRAUDULENT CONCEALMENT.
    Fraudulent concealment means employment of artifice, planned
    to prevent inquiry or escape investigation and mislead or hinder
    acquirement of information disclosing a right of action, and
    the acts relied on must be of an affirmative character and
    fraudulent (3 Comp. Laws 1929, § 13983).

Appeal from Wayne; Brennan (John V.), J., presiding. Submitted October 8, 1943. (Docket No. 72, Calendar No. 42,479.) Decided November 29, 1943.

Assumpsit by Joseph H. Barry against Detroit Terminal Railroad . Company, a corporation, for amount of wages. Directed verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*Edward N. Barnard,* for plaintiff.

*John J. Danhof* (*William A. Alfs* and *Russell T. Walker,* of counsel), for defendant.

BOYLES, C. J.  Plaintiff sues to recover wages alleged to be due him from defendant, beginning December 1, 1934, for breach of contract to return him to employment as a switchman on defendant's railroad. The declaration alleges that plaintiff was employed by the defendant as a switchman in 1928, that a contract was entered into by the Switchmen's Union of North America on behalf of plaintiff and all other switchmen in defendant's employ, by which the defendant agreed that in case of layoffs on account of reduction in power, the employees so laid off would be permitted to resume work in the order in which they were laid off (seniority in service). Plaintiff claims he was laid off from work December 15, 1929, that the defendant has failed to call him to return to work, that at various times the defendant has called other switchmen back to work who had been laid off subsequent to plaintiff, that the defendant "has violated and refused to recognize and to give force and effect to the seniority rights and preference to employment and recall to actual service guaranteed to him by such contract." The defendant pleaded as an affirmative defense,

among others, that plaintiff's cause of action was barred by the statute of limitations. The case was tried before a jury, and at the conclusion of the proofs the defendant moved for a directed verdict on the ground (among others) that the proofs showed that the cause of action was barred by the Michigan statute of limitations. The court granted the motion, directed a verdict of no cause for action, and plaintiff appeals from the judgment entered on the verdict. In view of the conclusion we reach on the one issue referred to, it is not necessary to discuss the several other questions raised by appellant.

This suit is essentially one for breach of an express contract. At the time plaintiff was employed by the defendant as a switchman and was laid off, he was a member of the switchmen's union. The union had a contract with the defendant, for and on behalf of its members, in which one of the provisions (article 17 [b]) was as follows:

"When switchmen are taken out of service on account of reducing in power, they will be permitted to resume service in the order in which they were taken out when the force is increased, provided they report for service within 10 days after being notified. Copy of recall notice to be furnished the local chairman."

The plaintiff was not recalled by defendant, has not been reemployed. He claims that the defendant employed other switchmen whose seniority rights were junior to his own, that the defendant thereby breached its contract, and that he is entitled to $6.64 per day from December 1, 1934, to April 1, 1940, the same wages he was receiving when laid off.

Plaintiff's suit was started by filing declaration April 18, 1940. If his cause of action accrued more

than six years prior to that date (subject to the exception hereinafter discussed), it is barred by 3 Comp. Laws 1929, § 13976 (Stat. Ann. § 27.605). (Subsequent amendments have no bearing on the case at bar.) Uncontroverted testimony showed that plaintiff's cause of action for breach of contract accrued prior to April 18, 1934.

One Edward Wilding testified that he was a switchman working for the defendant, a member of the Switchmen's Union of North America, that in 1933 and 1934 he was a member of the grievance committee of the union lodge covering defendant's employees, and that early in January, 1934, he had a conversation—"argued around quite a while"— with Mr. Cohan, defendant's general manager, regarding the seniority of members. He testified:

"The conversation I had with Mr. Cohan at that time regarding the seniority of the members of the union was there were certain men that was off the board that should be back on the board, and ones junior to them went in to work and they should have been taken off the board. I knew, as a member of the grievance committee of the switchmen's union, I knew at that time there were men whose seniority entitled them to jobs who were not working. I also knew there were men whose seniority was less than these men who were off, who were working. And that was the purpose of my visit, of my talk with Mr. Cohan, to discuss that problem. Now as a result, when I went up there, I explained to Mr. Cohan that that was the situation, and as a result of our conversation there was a suggestion made as to how to remedy, or what to do about the situation. Mr. Cohan suggested making an amendment. He suggested to us as members of the union we amend the contract so that men off duty, out of service, and off for a year, come back as new men."

One William Jones testified that he was an employee of defendant as a switchman in 1933-1934, a member of the switchmen's union, chairman of the grievance committee in 1933-1934, that in January, 1934, he discussed with Mr. Cohan amending the contract relative to the calling back of men who were "off the board." The fair import of his testimony is that in January, 1934, many former employees who were entitled to seniority had not been called, while many others junior in seniority or without any seniority rights had been employed at that time, January, 1934.

Defendant's paymaster, in defendant's employment since 1931, testified from his payroll records, giving the names and dates of seniority of 20 or more of defendant's employees whose seniority rights were inferior to those claimed by plaintiff, that these men had been returned to defendant's payroll at various times during January, February and March, in the year 1934. If, as claimed by plaintiff, his contract gave him seniority rights over these men, their reemployment in January, February and March of 1934 was a breach of his contract. This breach of contract occurred more than six years prior to April 18, 1940, when suit was commenced. Plaintiff's cause of action arose when the breach occurred. *Wasyluk* v. *Lubienski*, 244 Mich. 695; *Joyce* v. *Railroad Co.*, 291 Mich. 430. Plaintiff argues that the contract was not breached at the time when these men with lesser "seniority" rights were employed, because the contract required "copy of recall notice to be furnished the local chairman," —inferring that the contract would not be breached until the defendant failed to give a notice of recall of plaintiff to employment. If this argument is sound, the contract has not yet been breached and plaintiff does not yet have a cause of action; because no recall notice has yet been furnished. We take no stock in this argument.

But, plaintiff argues, the defendant fraudulently concealed the cause of action, wherefore plaintiff has two years within which he may bring suit after he discovered such cause of action, under 3 Comp. Laws 1929, § 13983 (Stat. Ann. § 27.612), which reads as follows:

"If any person who is liable to any of the actions mentioned in this chapter, shall fraudulently conceal the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 2 years after the person who is entitled to bring the same shall discover that he had such cause of action, although such action would be otherwise barred by the provisions of this chapter."

The plaintiff himself testified that he learned of the employment of other switchmen whose seniority rights were "behind" plaintiff's rights, in 1935. He testified:

"I learned eventually that they had taken on other switchmen. That was in 1935. It was in the spring. It must have been May or June,—May I believe. I picked it up on the street through other switchmen. That is, switchmen that wasn't connected with the Terminal, but had worked there or for other roads and it was told to them by somebody that went to work out there behind me.  *  *  *  I seen a different (number) that worked for another railroad, but I seen none of them that worked for the Terminal, and he informed me this fellow had went back to work, and he was junior to me.

"I learned in 1935 for the first time, they had taken back another man—yes, men younger than me in service.  *  *  *

"I said it was sometime in the spring of 1935 when I got to talking around among some of the boys and found out some man whose seniority was junior to mine was working.

"I also said that during the time I was—from the time I was laid off in December, 1929, until along in the spring of 1935, I did not go to my union meetings or to my union representatives. And during that same interval I did not go to the office of the Detroit Terminal Railway. *Not until after I had found out.*"

Plaintiff then went to see Mr. Cohan, defendant's general manager, about it. He testified:

"I went up to see Mr. Cohan in 1935—the day I was to see him, they were pulling off engines. They had pulled off two engines that day, and he told me, he said, 'We haven't got the engines.' I went to see Mr. Cohan. He said, 'We are pulling off two engines today,' and he said, 'You are the first man to be called back,' and he asked me if I had changed my address and I said it was the same place. After that, from 1935 to 1940 I did not go back to see Mr. Cohan again. I did not go around to the yard office at any time. It was up to them to notify me. I was right there waiting for a call. I did nothing, though, for five years. I did not wait until September 18, 1940, when I started this lawsuit which is in court today. I went and seen other lawyers previous to that time."

We fail to find in these circumstances any fraudulent concealment of the cause of action. Plaintiff had knowledge of the breach of contract (if any) in 1935.

"The statute was not designed to help those who negligently refrain from prosecuting inquiries plainly suggested by facts known, and the plaintiff must be held chargeable with knowledge of the facts, which it ought, in the exercise of reasonable diligence, to have discovered. *Purdon* v. *Seligman,* 78 Mich. 132; *Higgins* v. *Crouse,* 147 N. Y. 411 (42 N. E. 6); *Burke* v. *Smith,* 16 Wall. (83 U. S.) 390

(21 L. Ed. 361).'' *First National Bank of Ovid* v. *Steel,* 146 Mich. 308.

''Fraudulent concealment means employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of information disclosing a right of action. The acts relied on must be of an affirmative character and fraudulent.'' *DeHaan* v. *Winter,* 258 Mich. 293, 296.

Plaintiff's cause of action accrued in 1934. He was aware of it in 1935. Even conceding the possibility of fraudulent concealment being an issue of fact, as claimed by plaintiff, the record is plain that the concealment (if any) occurred in 1935, that plaintiff knew of the breach in 1935, and the suit was not started within two years thereafter. Plaintiff's cause of action being barred by the statute of limitations, it is not necessary to consider the other questions raised.

Judgment affirmed. Costs to appellee.

CHANDLER, STARR, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred with BOYLES, C. J. NORTH, J., concurred in the result.