ALLEN BRADLEY CO. v. LOCAL UNION NO. 3, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS.
No. 37, Docket 20687.

Circuit Court of Appeals, Second Circuit.

Nov. 6, 1947.

Harold Stern, of New York City (George Rosling, of Brooklyn, N. Y., on the brief), for defendants-appellants.

Walter Gordon Merritt, of New York City (McLanahan, Merritt & Ingraham and Hyler Connell, all of New York City, on the brief), for plaintiffs-appellees.

Before AUGUSTUS N. HAND, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

This appeal brings up for review the action taken by the district court in compliance with the mandate of the Supreme Court of the United States on remand of this case to it. The suit as originally brought to the district court was one seeking a declaratory judgment and an injunction against various activities of the defendant union and its officers as constituting a conspiracy in restraint of trade contrary to the Sherman Anti-Trust Act, 15 U.S.C.A. § 1 et seq. The case was referred to a master, who filed his report containing extensive findings of fact and conclusions of law favorable to the plaintiffs' contention. D.C., 41 F.Supp. 727. Thereafter the district court confirmed the master's report, with some limited alterations and additions, and granted the judgment and injunction. D.C., 51 F.Supp. 36. On appeal, this court was in agreement that the injunction was too broad, since it prohibited many legitimate union activities. On the further important issue as to the effect of activities committed by the union officers in combination with various non-union manufacturers and contractors of electrical equipment in the New York City area to boycott the products of non-local manufacturers, such as the plaintiffs, a majority of this court, Judge Swan dissenting, held that the attempted distinction between acts as legal when done by the union alone, and illegal when done in co-operation with the employers, was too vague and shadowy to be upheld under the then prevailing precedents of the Supreme Court. Accordingly we reversed the judgment and ordered the action dismissed. 2 Cir., 145 F.2d 215. The Supreme Court, however, reversed our holding, deciding that acts by business men which otherwise would violate the Sherman Act still did so, notwithstanding the shield of union co-operation, and that an otherwise illegal conspiracy did not become legal when aided and abetted by a union. The Court explicitly agreed with our view that the injunction improperly prohibited legitimate, as well as illegal, union activities. Accordingly upon reversal of our judgment the Court ordered the cause "remanded to the district court for modification and clarification of the judgment and injunction, consistent with this opinion." 325 U.S. 797, 812, 813, 65 S.Ct. 1533, 89 L.Ed. 1939.

Upon remand the district court, after receiving and considering proposed drafts from both plaintiffs and defendants, entered the judgment and injunction here in question. It felt it had no power to change the details of the findings of fact, 374 in number, which were included in the former judgment, but did modify the conclusions of law, the declaratory judgment, the order for the injunction, and the writ of injunction itself. Thus of the 128 pages of the printed judgment and injunction, it changed only the last 14 pages. The changes made were by way of amendment, not redraft, of the former provisions, substantially by the addition of general language stating that the activities of the union as set forth in the detailed findings were illegal when done in combination and conspiracy with non-labor contractors and manufacturers "to control prices and markets for such equipment by stifling competition for the benefit of both the defendants and such contractors and manufacturers." Such expressions as "that the activities of the defendants, *as hereinbefore set forth*,[1] to the extent that they are carried on in combination and conspiracy with non-

---

[1] Italics supplied.

labor groups, * * * were, and are, illegal" still carry the detailed findings over into the judgment and injunction.

In attacking the present judgment, defendants again present the draft they offered to the trial court as the most appropriate means of carrying out the mandate of the Supreme Court. Before considering their contentions in some detail we think it appropriate to say that the judgment appealed from does not follow the form which we should adopt as preferable, were we acting as a court of first instance. In our previous decision we criticized the inclusion in the judgment of the lengthy, verbose, and repetitive findings, many of which are now irrelevant because of the changed conceptions of the Anti-Trust Law occurring during the protracted hearings in the case. We still feel that better practice would relegate these lengthy findings, as well as the conclusions of law, to a separate document not formally a part of the judgment proper, and that it would also restrict the judgment to a concise recital of the prohibited acts without lengthy repetitive detail intermingled by reference with facts elsewhere stated. As it stands, defendants, even when engaged in legitimate union activities, are likely to provoke the flinging at them, in literal truth, of a whole book of federal prohibitions contained in pages of abstract and technical legal detail. Under the circumstances, separating the licit from the illicit seems a heavy task for the workers and union officials, against whom the court's command is directed. Nevertheless, in view of the district court's large measure of discretion as to the wording of its decrees, Linde Air Products Co. v. Morse Dry Dock & Repair Co., 2 Cir., 246 F. 834, 836, as well as the defendants' own adoption of this type of judgment in their draft, and the intermediate nature of our own rulings as this case journeys again to the Supreme Court for final adjudication, we think it would serve no good purpose for us here to go outside the issues presented by the drafts considered below.

The first of the defendants' proposals is that some 230 or more of the 354 findings of fact be omitted, as relating only to permissible combinations of labor officials and as having no relevance to a combination of labor and non-labor elements. We are clear, however, that these unchallenged findings of fact cannot now be substantially revised through the process of selection and omission. Whatever their present value or relevance, they are the findings upon which decision in this action now turns. We think they must stand as such and their relevance evaluated not by revision through omission, but by the explicit terms of the declaratory judgment and the injunction. Moreover, any danger of misunderstanding will be avoided, we believe, by the modifications and additions ordered hereinafter. This contention we therefore overrule.

Defendants next seek a revision of the conclusions of law set forth in the master's report and the district court's judgment. Actually the court did revise its conclusions and reduce their number. Here, too, we think clarity would have been promoted, and the danger of confusion by repetition avoided, had the conclusions covered only the court's jurisdiction and the further general statement that defendants had violated the Anti-Trust Act and plaintiffs were entitled to the remedies, all as thereinafter stated and provided. But here, too, under the circumstances we feel compelled to follow the mold fashioned below. Since, however, these conclusions control not only the declaratory judgment, but also the order for the injunction, and the writ of injunction itself, we think their terms can be better settled in the sharper perspective afforded by these latter provisions, and most directly in the court's order for the injunction.

Here the controversy centers most sharply about the clause quoted above, which defines the nature of the combination and conspiracy by the union with non-labor groups. Following the plaintiffs' draft, the court has defined it as one "to control prices and markets for such equipment by stifling competition for the benefit of both the defendants and such contractors and manufacturers." Instead of this the defendants offer "to fix prices and divide up the market for electrical equipment and

materials for the benefit of said non-labor groups." We doubt if many readers would find substantial difference in the intent, purpose, and meaning of these two expressions. Referring particularly to the first difference, while it is true that the Supreme Court employed the language used by defendants, it also made general reference to "price and market control." 325 U.S. 797, 800, 808, 810, 65 S.Ct. 1533, 89 L.Ed. 1939. If, as apparently the parties assume, the plaintiffs' version has a more inclusive meaning, it should be used, as that appears to be the general intent of the Court. As to the second difference, we think that the rather academic quibbling over whose is the benefit misses the real thought which the Supreme Court expressed when it condemned the actions of the union in endeavoring to "aid and abet business men who are violating the Act." 325 U.S. 807, and see also 801, 808, 810, 820, 821, 65 S.Ct. 1539, 1536–1545, 89 L.Ed. 1939.[2] In view of the detailed prohibitions of specific overt acts which immediately follow, no further characterization seems really needed; perhaps, however, the idea may be expressed with some further appropriate emphasis by substituting these words: "in aid and furtherance of the combination and conspiracy herein defined."

█ Since defendants do not object to, but actually incorporate in their draft, the extensive definition of prohibited overt acts found in subdivisions (a) to (j), inclusive,

of this paragraph, we have no occasion to revise their form.[3] In addition, defendants urge inclusion of a provision that the injunction shall not reach union activities when not in combination with non-labor groups as prohibited. We think this is a necessary statement, particularly in view of the presence in the judgment of the extensive findings going beyond these illegal activities.

With the changes thus provided for, and repeated in other parts of the entire document where appropriate, we think the judgment will carry out the mandate of the Supreme Court as nearly in accordance with the desires of the parties as is possible under the circumstances. We now summarize the modifications we order.

Paragraph 2 of the formal order and judgment (as distinguished from the findings of fact and conclusions of law) shall read as follows:

"2. The court hereby declares that the activities of the defendants, of the form and kind stated in subdivisions (a) to (j), inclusive, of Paragraph 3 hereof, to the extent that they are carried on in combination and conspiracy with non-labor groups, consisting of electrical contractors and manufacturers of electrical equipment in the Greater New York City area, to control prices and markets for such equipment by stifling competition in aid and furtherance of the combination and conspiracy herein defined, and being done down to the date

---

[2] The Court assumed that "standing alone" a bargaining agreement between the union and the employers in which the latter agreed not to buy goods manufactured by companies which did not employ members of the union would not violate the Sherman Act. 325 U.S. 809, 65 S. Ct. 1533, 89 L.Ed. 1939.

[3] As illustrative of the others we quote here the first and last of these subdivisions:

"(a) Inducing or seeking or attempting to induce any person, firm, or corporation to refrain from purchasing or from agreeing to purchase any electrical equipment, including electric switchboards, electric panel boards, distribution boards, power switches, safety switches, knife switches, enclosed switches, cutout boxes, small and large air circuit breakers, motor starters and controllers and other industrial control apparatus,

lighting fixtures, lighting sockets, signalling devices, conduits and wire and cable for the transmission of electrical current, or any of the same from any of said plaintiffs.

\* \* \* \* \* \* \*

"(j) Taking any action whatsoever, or attempting so to do, to prevent, stop, hinder or burden the purchase, installation, assembling or use of any kind of electrical equipment produced by the plaintiffs, or any of them, on the ground that such equipment was not made in New York City, in whole or in part, or was not worked upon by members of said Local Union No. 3, or enters into competition with electrical equipment made by manufacturers who employ members of said Local Union No. 3 in New York City or vicinity, or elsewhere within the jurisdiction of said Local Union No. 3."

of the conclusion of the taking of testimony herein before the Special Master, were, and are, illegal and in violation of Sections 1 and 2 of the Sherman Anti-Trust Act, and further declares that such activities, to said extent and as so defined, as consisted in boycotting certain electrical equipment[4] not made by members of the defendant, Local Union No. 3, and in requiring that certain electrical equipment for use in the Greater New York City area be wired and assembled only by members of said Local Union No. 3, are not legitimate labor activities falling into the sphere designated by the United States Supreme Court as 'licit' activities under Section 20 of the Clayton Act [29 U.S.C.A. § 52]."

Paragraph 3 thereof shall read as follows:

"3. The Clerk of this court be, and he hereby is, directed to issue a writ of injunction directed to the defendants, Local Union No. 3, International Brotherhood of Electrical Workers, and the members thereof, and Bert Kirkman, William Beck, Hugh Morgan, Jacob S. Solomon and Gerald Duffy, and each of them, their and each of their agents, servants, attorneys, confederates and all persons acting in conjunction with them, or any of them, perpetually and permanently restraining and enjoining them, and each of them, from in any manner carrying on any of the following activities when such activities are carried on in combination and conspiracy with non-labor groups, consisting of electrical contractors and manufacturers of electrical equipment in the Greater New York City area, to control prices and markets for such equipment by stifling competition in aid and furtherance of the combination and conspiracy herein defined, and when such activities obstruct, restrain or interfere with the interstate trade or commerce of the plaintiffs, or any of them, by to wit:

[Here shall be included subdivisions (a) to (j), inclusive, in their present form.[5]]

"But said injunction shall not and does not enjoin or restrain said persons, or any of them, from engaging in any of said activities when said activities are not in combination with non-labor groups, consisting of the electrical contractors and manufacturers aforementioned, to control prices and markets for electrical equipment by stifling competition in aid and furtherance of such combination and conspiracy."

Conforming modifications shall also be made where language here modified appears in the writ of injunction, and also in Conclusions of Law 3, 4, 9, and 10. Moreover, Conclusions 9 and 10, which state the form of relief to be accorded plaintiffs, as well as the writ of injunction, shall carry the proviso we are adding to Paragraph 3, following subdivision (j), which declares other union activities to be legally permissible. Costs in this court on this appeal are equally divided between the plaintiffs and the defendants.

*Judgment modified as directed in the opinion.*

---

4 "Is," appearing at this point in the original, seems clearly a mistake.

5 See references in note 3, supra.