**SCHATTE et al. v. INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES AND MOVING PICTURE MACHINE OPERATORS OF UNITED STATES AND CANADA et al.**

No. 12321.

United States Court of Appeals
Ninth Circuit.

May 1, 1950.

Zach Lamar Cobb, Los Angeles, Cal., for appellant.

O'Melveny & Myers, Homer I. Mitchell and W. B. Carman, Los Angeles, Cal., for appellees Ass'n of Motion Pict. Prod. et al.

Bodkin, Breslin & Luddy, Michael G. Luddy, Los Angeles, Cal., for appellees Int. Alliance et al.

James P. Blaisdell, Livingston Jenks, Marshall M. Goodsill, Jr., Honolulu, T. H., for Matson Navigation Co., amici curiæ.

Before ORR and POPE, Circuit Judges, and WEINBERGER, District Judge.

ORR, Circuit Judge.

This appeal is from the dismissal of a complaint for failure to state a claim for relief within the jurisdiction of the district court. No diversity of citizenship is alleged.

Appellants are members of Local 946 of the United Brotherhood of Carpenters and Joiners of America, which is affiliated with the A. F. of L. The employer appellees are major motion picture studios, which manufacture motion pictures for interstate commerce, and the Association of Motion Picture Producers, Inc., which is composed of said studios. The labor appellees are the International Alliance of Theatrical and Stage Employees, a labor union affiliated with the A. F. of L., hereinafter referred to as the I.A.T.S.E. and certain of its officers. Many members of the I.A.T.S.E. work in the motion picture studies. Appellants, while employed as carpenters, became involved in a jurisdictional dispute with I.A.T.S.E., refused to perform certain work and were, in effect, discharged. They filed a complaint in the district court on behalf of themselves and the other members of Local 946, persons similarly situated, asking for damages arising from breach of contracts and alleged conspiracies, and other wrongful acts.

The complaint is divided into four purported causes of action. The first "cause of action" alleges a series of written agreements between the Brotherhood of Carpenters and the I.A.T.S.E., and among the carpenters, I.A.T.S.E., other unions and employer appellees. The complaint alleges that said agreements provided that members of the Brotherhood of Carpenters should receive fixed hourly wages, a six-hour day and a closed shop; that only members of the Brotherhood should be permitted to do the carpentry work of the studios, and that the carpenters, and not the I.A.T.S.E., should do the work of constructing sets on stages. It is then alleged that the employer appellees and the labor appellees entered into a conspiracy to replace the carpenters working in the studios with members of the I.A.T.S.E. in violation of the written agreements. Pursuant to conspiracy, it is alleged, the employer appellees systematically requested all the carpenters in their employ to do work on sets which had been constructed by members or permittees of the I.A.T.S.E. and, when the carpenters refused, ordered them to cease work and leave the premises unless and until they became willing to work under conditions less favorable than those provided in the written agreements. The purpose and effect of the conspiracy, according to the complaint, was to deprive appellants and carpenters in whose behalf they sue, of their contractual rights to work for the employer appellees under agreed conditions, including a six-hour day and a closed shop, and this deprivation is alleged to have continued to the time of filing the complaint.

The "first cause of action" also includes the allegation that the appellees falsely represented to the California State Unemployment Commission that the carpenters had left their work in a trade dispute, thus

causing the Commission to deprive the carpenters, including appellants, of unemployment benefits to which they were entitled under federal and state laws.

The "second cause of action" alleges that the deprivation of appellants' contractual rights to work was brought about and has been continued in effect by threats made by the I.A.T.S.E. to the employer appellees and other employers. It is further stated that subsequent to the enactment of the Labor-Management Relations Act of 1947, known as the Taft-Hartley Act, 29 U.S.C. A. § 141 et seq., the carpenters sought to bargain with the employer appellees but were rebuffed, whereupon they filed an unfair labor practice complaint against the employer appellees with the National Labor Relations Board; that the complaint was investigated by a field examiner who was, as the Labor Board officers well knew, a member of the I.A.T.S.E.; and that the complaint was dismissed on the recommendation of the field examiner.

The "third cause of action" alleges that the rights under the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., to bargain collectively and to have a fair hearing on charges of unfair labor practices, and the right to unemployment benefits, arising under the Social Security Act, 42 U.S.C.A. § 503, and the California Unemployment Insurance Act, Gen.Laws, Act 8780d, are at the same time civil rights of citizens of the United States of which appellants were deprived by the acts of appellees alleged in the preceding "causes of action." It is alleged that appellees thereby became liable for damages to appellants and the carpenters under the Civil Rights Acts, 8 U.S.C.A. §§ 43, 47.

The "fourth cause of action" alleges that the employer appellees compelled smaller motion picture producers to replace the carpenters with the less efficient members of the I.A.T.S.E., with the intention and effect of increasing the smaller studios' cost of production beyond their financial capacity and eventually eliminating all competition against the financially stronger employer appellees. In addition to a general allegation of damage to appellants' business and property within the meaning of the Sherman and Clayton Acts, 15 U.S. C.A. § 15, it is alleged that appellants will suffer in the future by being required to pay increased prices of admission to motion picture theatres.

■ In Schatte v. I.A.T.S.E., No. 11,-653, reported in 165 F.2d 216, this court adopted the opinion of the District Court, reported in 70 F.Supp. 1008, dismissing a complaint filed by many of the same persons who are appellants here against the same defendants who are appellees here, alleging the same written agreements and some of the same wrongful acts and deprivation of rights as are alleged here. We consider the decision in case No. 11,653 decisive as to the same issues presented in the instant case. The action in case No. 11,653 was for a declaratory judgment of the plaintiffs' rights under the alleged written contracts, which were alleged to have been negotiated pursuant to the right to bargain collectively as provided in the National Labor Relations Act, 29 U.S.C.A. § 157. Declaratory relief was also requested as to plaintiffs' rights to work despite an alleged conspiracy, allegedly implemented by strike threats of the I.A.T.S.E., to deprive plaintiffs of their contract rights to do carpentry work in the studios.

The former case held that no cause of action was stated under the National Labor Relations Act, the Civil Rights statutes, 8 U.S.C.A. §§ 43 and 47(3), or the Fifth or Fourteenth Amendments to the Constitution of the United States, and that, therefore, no jurisdiction existed in the United States courts to grant the relief prayed for in the complaint. However, the complaint in the former case did not contain allegations found here with respect to misrepresentations to the California Unemployment Insurance Commission, the refusal of the employer appellees to bargain collectively, the bias of the N.L.R.B. field examiner who investigated the charges against employer appellees, or the so-called conspiracy in restraint of trade. Furthermore, §§ 301 and 303 of the Taft-Hartley Act, 29 U.S.C.A. §§ 185, 187, invoked by appellants as a basis of jurisdiction here, had not yet been enacted at the time the complaint was filed in the earlier case. The complaint in

the instant case presents for consideration the question of the sufficiency of the additional allegations contained therein to state a cause of action under any federal law and the sufficiency of the allegations as to breach of contract and as to conspiracy among appellees, implemented by threats of the I.A.T.S.E., to exclude appellants from employment with employer appellees under the Taft-Hartley Act only.

Section 301 of the Taft-Hartley Act, 29 U.S.C.A. § 185, provides: "(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

We find it unnecessary to determine whether or not the complaint states a cause of action under § 301 for the reason that said section was enacted subsequent to the alleged breach of contract in the instant case and the section is therefore inapplicable. Section 301 was not enacted merely to provide a new forum for the enforcement of contracts theretofore enforceable solely in the state courts. Had such been its sole purpose the constitutionality of the section as to actions in which diversity of citizenship was lacking might well be questioned. But the wording of the section and its place in the Taft-Hartley Act demonstrates that the section was designed to protect interstate and foreign commerce by creating a new substantive liability, actionable in the federal courts, for the breach of a collective bargaining contract in an industry affecting interstate or foreign commerce. Wilson & Co. v. United Packinghouse Workers, D.C.N.Y., 83 F.Supp. 162; Colonial Hardware Flooring Co. v. International Union, D.C., 76 F.Supp. 493; see, Note, 57 Yale L.J. 630. Such a new liability was not attached to breaches of contract which occurred before the statute was enacted. Cf., Taft-Hartley Act, § 102, 29 U.S.C.A. note to § 158.

The Taft-Hartley Act was enacted June 23, 1947. The complaint alleges that appellants were forced to leave their employment on or about September 23, 1946. Thus, whatever breach of contract is alleged took place at least nine months before the enactment of the statute. Appellants stress the allegations of the complaint that appellees have continuously maintained a "mass lockout" against appellants down to the time of the complaint as establishing a "continuous breach" extending until after the enactment of § 301. The breach of contract alleged was total and absolute on or about September 23, 1946, and the cause of action, if any, for such breach accrued in its entirety at that time. The general rule is that an employee who is discharged in violation of his contract of employment may sue only once and at that time recover all present and prospective damages. Howard v. Chicago, B. & Q. R. Co., 8 Cir., 1945, 146 F.2d 316; Seymour v. Oelrichs, 1909, 156 Cal. 782, 106 P. 88, 134 Am.St.Rep. 154; Williston on Contracts (Rev. ed. 1937) §§ 1361-1362. The period of limitations on an action by an employee under a contract of employment generally runs from the time at which the employee is discharged or refused employment. Taylor v. Tulsa Tribune Co., 10 Cir., 1943, 136 F.2d 981; Barry v. Detroit Terminal R. Co., 1943, 307 Mich. 226, 11 N.W.2d 867; Baron v. Kurn, 1942, 349 Mo. 1202, 164 S.W.2d 310, 142 A.L.R. 787. The alleged continuous acts of barring appellants from employment subsequent to the enactment of § 301 concededly might serve to enhance the damages for a breach of contract to which liability had already attached, but such acts could not in themselves constitute "violation of contracts" within the meaning of § 301, because, according to the complaint, no contracts between appellants and appellees remained outstanding.

In A. F. of L. v. Western Union Telegraph Co., 6 Cir., 1950, 179 F.2d 535, a union filed a complaint against an employer alleging a breach of a collective bargaining contract on April 30, 1946. The Court of Appeals held that a valid cause of action was stated under § 301 without mention in

its opinion of the fact that § 301 was not enacted until June 23, 1947. Thus the question of whether § 301 is applicable where a breach arose before its enactment was not expressly decided by the court, notwithstanding the practical effect of its decision was to apply § 301 to such a case. Cf., Webster v. Fall, 1925, 266 U. S. 507, 45 S.Ct. 148, 69 L.Ed. 411. It is noteworthy, however, that the complaint in the A. F. of L. v. Western Union case alleged a breach of contract as to only one out of some 40,000 employees involved, and that the prayer, in part, asked for declaratory and injunctive relief with respect to the entire contract, which was still in force and effect.

Section 303 of the Taft-Hartley Act, 29 U.S.C.A. § 187, provides:

"(a) It shall be unlawful, for the purposes of this section only, in an industry or activity affecting commerce, for any labor organization to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment to * * * handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is—

> \* \* \* \* \* \*

"(4) Forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another * * * trade, craft, or class * * *.

"(b) Whoever shall be injured in his business or property by reason of any violation of subsection (a) of this section may sue therefor in any district court of the United States subject to the limitations and provisions of section 301 [hereof] without respect to the amount in controversy, or in any other court having jurisdiction of the parties * * *."

■ The district court, noting that § 303(b) omits the phrase, "without regard to the citizenship of the parties," which appears in § 301(a), held that diversity of citizenship is a requirement for suits under § 303(b), and, hence, diversity not being present, § 303(b) could not be relied upon for jurisdiction in the instant case. We do not agree that diversity of citizenship is required. Section 303, even more explicitly than § 301, creates new substantive rights and liabilities, together with an appropriate remedy for their enforcement. An action under § 303(b), therefore, clearly arises under a law of the United States within the meaning of 28 U.S.C.A. § 1331 and under an Act of Congress regulating commerce within the meaning of 28 U.S. C.A. § 1337. Both § 1331 and § 1337 grant jurisdiction to federal district courts without any requirement of diversity of citizenship.

■ We do think, however, that the complaint does not allege an act or acts by appellees which are declared unlawful by § 303(a). Appellants point to the allegation of threats made to employer appellees and other employers by the I.A.T.S.E. to the effect that if appellants were permitted to do certain carpentry work in the studios, all work would be stopped in the studios, exchanges and theatres. The statute does not make actionable a mere threat of a strike or concerted refusal to work made by a union to an employer. There must be either an actual work stoppage or an inducement or encouragement to *employees* to stop work. The I.A.T.S.E., according to the complaint, merely threatened that *if* employer appellees did not comply with certain demands, then the I.A.T. S.E. would induce certain employees to stop work.

Since no act is alleged that is wrongful under § 303(a), we need not consider whether the alleged acts took place or continued after the enactment of that section.

Section 7, National Labor Relations Act

■ Appellants contend that the alleged actions of appellees deprived appellants of the right to self-organization and collective bargaining as created by § 7 of the National Labor Relations Act, 29 U.S. C.A. § 157, and thereby subjected appellees to liability for damages in the federal courts. This contention is without merit. Deprivation of the rights guaranteed by § 7 on the part of the employer appellees

would have been an unfair labor practice under § 8(1) of the Wagner Act, 29 U.S.C.A. § 158(1). It is well settled that the exclusive remedy for the commission of an unfair labor practice was in proceedings before the National Labor Relations Board under the Wagner Act. 29 U.S.C.A. § 160(a); Amalgamated Utility Workers v. Consolidated Edison Co. of New York, 1940, 309 U.S. 261, 60 S.Ct. 561, 84 L.Ed. 738. The same is true under the National Labor Relations Act as amended by the Taft-Hartley Act, except in so far as the district courts are given jurisdiction over certain suits for injunctions brought by the Government and over suits brought by private parties under §§ 301 and 303, discussed above. California Association of Employers v. Building and Construction Trades Council, 9 Cir., 1949, 178 F.2d 175; Amazon Cotton Mill Co. v. Textile Workers Union, 4 Cir., 1948, 167 F.2d 183. Cf. Slocum v. Delaware, L. & W. R. R. Co., 70 S.Ct. 577. Under the Wagner Act labor appellees would not have been subject to unfair labor practice charges for interfering with the rights granted by § 7. This immunity from proceedings before the National Labor Relations Board would not make them subject to liability in the courts because judicial relief might have interfered with the function of the National Labor Relations Board. United Electrical Radio & Machine Workers v. International Brotherhood of Electrical Workers, 2 Cir., 1940, 115 F.2d 488. Of course making interference with § 7 rights by a labor organization an unfair labor practice under § 8(b) (1), added by the Taft-Hartley Act, 29 U.S.C.A. § 158 (b) (1), did not change this result.

## Civil Rights Acts

■■■ Appellants' next contention is that the complaint states a claim for relief under 8 U.S.C.A. §§ 43 and 47(3), commonly known as the Civil Rights Acts. It is alleged in the complaint that the National Labor Relations Board field examiner who investigated appellants' unfair labor practice charges against appellees was a member of the I.A.T.S.E. and, hence, did not make an impartial investigation, and that the General Counsel, knowing of such membership, was induced by appellees to accept the field examiner's report and to refuse to issue an unfair labor practice complaint against appellees. These allegations are clearly insufficient to state a claim for relief under § 43 because appellees are not alleged to have acted under color of any state or territorial law, custom or usage. Laughlin v. Rosenman, 1947, 82 U.S.App.D.C. 164, 163 F.2d 838, 843.

■■■■ The allegations are also insufficient under § 47(3).

To state a claim for relief under § 47(3), the complaint must show that there was a deprivation of equal protection of the laws or of an equal privilege or immunity under the laws. Whatever privileges and immunities were created by the National Labor Relations Act were limited in scope to the remedies which were provided for enforcing those privileges and immunities. Appellants had a right to press charges of unfair labor practices through specified procedures. They were not denied that right. A hearing was granted. An erroneous finding by a hearing officer is not a deprivation of an equal privilege or immunity.

The civil remedies provided by the Civil Rights Acts are not a means of obtaining redress from errors in official proceedings and decisions which are untainted by conspiracy or fraud. Cf., Bottone v. Lindsley, 10 Cir., 1948, 170 F.2d 705; Mitchell v. Greenough, 9 Cir., 1938, 100 F.2d 184.

■■■■ The allegations that appellees made misrepresentations to the California Unemployment Commission with the intent and effect of wrongfully depriving appellants of unemployment benefits are likewise insufficient under the Civil Rights Acts. 8 U.S.C.A. § 43 is inapplicable because appellees are not alleged to have deprived appellants of rights while acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." The reason for the quoted phrase is to bring the wrongful acts within the scope of "state action" under the Fourteenth Amendment. To be liable under this section, therefore, appellees would have had to act, or to purport to act, on

behalf of the state as state officials, or, possibly, to conspire with persons so acting. Picking v. Pennsylvania Railroad Co., 3 Cir., 1945, 151 F.2d 240. Making representations to a state official, even in a report required by law, is not acting "under color of law" because it does not purport to be done on behalf of the state. Davidow v. Lachman Bros. Inv. Co., 9 Cir., 1935, 76 F.2d 186; cf., Bottone v. Lindsley, supra.

The insufficiency of the allegations concerning unemployment benefits under § 47(3) rests on the same ground as the insufficiency, under that section, of the allegations concerning denial of alleged rights, under the National Labor Relations Act. Assuming that § 303(a) (3) of the Social Security Act, 42 U.S.C.A. § 503(a) (3), and related laws do create a federal right to a fair and impartial hearing for those denied unemployment compensation, that right is enforceable only to the extent of the remedies provided by law for enforcing it. There is nothing in the allegations to show that appellants were hindered or prevented in any way from pursuing the remedies open to them or that the proceedings on the application for benefits were tainted by conspiracy or fraud.

### Anti-trust laws.

The complaint alleges that appellees compelled minor studios, competitors of employer appellees, to employ allegedly less efficient members of the I.A. T.S.E. in place of the allegedly more efficient members of appellants' union, with the intent and effect of increasing the production costs of such competitors, and of ultimately driving the competitors out of business and enabling employer appellees to increase the prices of their products. Apart from the sufficiency of allegations of damage to appellants under 15 U.S.C.A. § 15, these alleged acts do not constitute a violation of the anti-trust laws. This is made clear by the Supreme Court in Apex Hosiery Co. v. Leader, 1940, 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311, 128 A.L.R. 1044, in a detailed discussion of the types of acts which constitute restraints of trade within the contemplation of those

laws. It is there pointed out that the term "restraint of trade" in the anti-trust laws is to be given the meaning which the phrase had at common law, and that "[the Supreme] Court has never applied the Sherman Act in any case, whether or not involving labor organizations or activities unless the Court was of opinion that there was some form of restraint upon commercial competition in the marketing of goods or services * * *." 310 U.S. 469, 495, 60 S.Ct. at page 993, 84 L.Ed. 1311, 128 A.L.R. 1044. Compelling others to adopt certain employment policies is not a restraint upon commercial competition in this sense. "Since, in order to render a labor combination effective it must eliminate the competition from non-union made goods, * * * an elimination of price competition based on differences in labor standards is the objective of any national labor organization. But this effect on competition has not been considered to be the kind of curtailment of price competition prohibited by the Sherman Act." 319 U.S. 469, 503, 504, 60 S.Ct. at page 997, 84 L. Ed. 1311, 128 A.L.R. 1044. In Allen Bradley Co. v. Local Union No. 3, 1945, 325 U.S. 797, 65 S.Ct. 1533, 189 L.Ed. 1939, the conspiracy extended beyond the imposition of labor standards, to the control of prices and marketing conditions. After remand by the Supreme Court, the decree was modified to exclude from prohibited acts those which were not for the purpose of controlling prices and markets by stifling competition. Allen Bradley Co. v. Local Union No. 3, 2 Cir., 1947, 164 F.2d 71, 75.

Another reason why no cause of action is stated under 15 U.S.C.A. § 15 is that no damage to business or property which stems from a conspiracy in violation of anti-trust laws is alleged. The loss of their rights of employment is not a result of any lessening of commercial competition among the studios. The alleged possibility that in the future they may have to pay higher prices for tickets if and when they choose to attend the movies is far too remote and speculative to be the basis for any recovery of damages.

Judgment dismissing the complaint is affirmed.