PEPPER & POTTER, Inc. v. LOCAL 977,
UNITED AUTO WORKERS,
C.I.O. et al.

United States District Court
S. D. New York.

March 17, 1952.

Hyman I. Fischbach, New York City, for plaintiff.

Boudin, Cohn & Glickstein, New York City, for defendant Local 977, United Auto Workers, C.I.O.

Daniel W. Meyer, New York City, (Jerome B. Lurie, Daniel W. Meyer, Ruth W. Levitan, all of New York City, of counsel), for defendant Local 259, United Auto Workers, C.I.O.

Bandler, Haas & Kass, New York City, (Julius Kass, Richard L. Halpern, New York City, of counsel), for United Auto Workers, C.I.O., International Union.

WEINFELD, District Judge.

This is an action by an employer, engaged in a business affecting commerce, against two local unions of the United Auto Workers and the International with which they are affiliated under Sections 301 and 303 of the Labor Management Relations Act of 1947, 29 U.S.C.A. §§ 185, 187. There is no allegation of diversity of citizenship or amount in controversy, plaintiff relying upon said sections of the Act for jurisdiction. The defendants move to dismiss the complaint for lack of jurisdiction of the subject matter and for failure to state claims upon which relief may be granted. Two claims are asserted in the complaint.

I

The first claim is asserted only against Local 977. The complaint alleges that upon certification by the National Labor Relations Board of the defendant Local 977 as the sole and exclusive bargaining agent of plaintiff's employees, a collective bargaining agreement binding upon both plaintiff and the said union, became effective on September 20th, 1950, which was

to continue for one year [1] with an automatic renewal clause.

Plaintiff charges that in the month of February, 1951, and continuing thereafter, Locals 977 and 259 and the International conspired to destroy and repudiate the agreement by inducing plaintiff's employees to refuse performance as required thereunder and to make various demands contrary to its provisions, notwithstanding due performance on plaintiff's part.

Specific acts are ascribed to the three unions to further their purposes, including a disavowal by Local 977 of its representation of plaintiff's employees, despite the certification; renunciation by the employees of their membership in Local 977; their affiliation with and designation of Local 259 as their new bargaining representative; refusal by Local 977 and the employees to perform pursuant to the agreement; demands by Local 259 that plaintiff recognize it instead of Local 977 and negotiate a new contract containing different terms and conditions from those contained in the outstanding agreement with Local 977. The events continued from February to April 1951, and finally culminated on April 25th, 1951, when plaintiff alleges the defendants, including Local 977, picketed and demonstrated, and continued to do so, at plaintiff's place of business and otherwise interfered with its operations.

The various acts are charged as a breach of the agreement, all intended for the purpose of compelling the plaintiff, to acquiesce in the repudiation of the agreement by Local 977, to release said local from its obligations thereunder and to force plaintiff to recognize Local 259 as the new representative and to enter into contractual relations with it.

Section 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185(a), provides in part: "(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in

1. The agreement was entered into on May 18th, 1950, but was made subject to the defendant Local 977's certification by the National Labor Relations Board. Upon proceedings instituted by the union before the Board, certification was granted.

this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

■ This section confers new substantive rights between employers and employees engaged in interstate commerce, and makes collective bargaining contracts equally enforceable on both and provides a forum for their enforcement. Shirley-Herman Co. v. International Hod Carriers, etc., 2 Cir., 182 F.2d 806, 17 A.L.R.2d 609; Textile Workers Union of America v. Arista Mills Co., 4 Cir., 193 F.2d 529; Wilson & Co. v. United Packinghouse Workers, D. C., 83 F.Supp. 162; Colonial Hardwood Flooring Co. v. International Union, etc., D. C., 76 F.Supp. 493, affirmed 4 Cir., 168 F. 2d 33; Schatte v. International Alliance, etc., D.C., 84 F.Supp. 669.

Local 977 urges that only "suits for violation of contracts" may be brought under Section 301 and since the claim alleged in the complaint is one for tortious conspiracy, the claim is not maintainable thereunder and the Court is without jurisdiction in the absence of diversity of citizenship.

■ It may be acknowledged that the complaint fails to contain the "short and plain statement" required under Rule 8(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. and that the claim is obscured by references to conspiracy and tortious conduct on the part of Local 977 acting in concert with the other two defendants who are not named with it in this first claim. Nevertheless, it contains the elements of a claim for violation by Local 977 of its collective bargaining agreement with plaintiff. The allegations sufficiently set forth the contract, due performance by plaintiff, breach of Local 977's obligations thereunder, and, finally, damages. The references to evidentiary matter, while unnecessary for the purposes of setting forth the claim, do not detract from the gist of the claim for breach of contract against Local

977, the sole defendant. The claim is within Section 301 of the Act and diversity of citizenship is not necessary thereunder.

The motion to dismiss the first claim against Local 977 is denied but without prejudice to any motion which the defendant may deem appropriate to require plaintiff to state, as required by the rules, a claim based upon the contract, its breach and damages.

II

The second claim seeks recovery against all three defendants. In addition to the allegations of the first claim, the complaint charges that Local 259 and the International had knowledge of the agreement between plaintiff and Local 977 and the latter's status as exclusive bargaining representative under the certification by the National Labor Relations Board.

The claim is based upon Section 303 of the Act, 29 U.S.C.A. § 187, which provides:

"(a) It shall be unlawful, for the purposes of this section only, in an industry or activity affecting commerce, for any labor organization to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is—

*    *    *    *    *    *

"(3) forcing or requiring any employer to recognize or bargain with a particular labor organization as the representative of his employees if another labor organization has been certified as the representative of such employees under the provisions of section 159 of this title; * * *."

This section parallels Section 8(b)(4) (C), 29 U.S.C.A. § 158(b)(4)(C), of the Act, which denounces, as unfair labor practices, strikes and boycotts designed to force an employer to disregard his obligation to recognize and bargain with a certified union and in lieu thereof to bargain with or recognize another union.[2]

2. H.R.No.510, 80th Congress, First Session; p. 67 with respect to Section 303; p. 44 with respect to Section 8(b) (4) (C).

Two different and independent remedies are contemplated by these parallel provisions.[3] Section 8(b)(4)(C) is intended to achieve and lead to administrative sanctions, whereas its counterpart, Section 303 (a)(3), provides private redress to an employer by way of damages from labor organizations responsible for those unfair labor practices condemned in Section 8(b)(4)(C) and subject to administrative process. International Longshoremen's & Warehousemen's Union v. Juneau Spruce Corp., 342 U.S. 237, 72 S.Ct. 235.

The defendants emphasize that the union activities condemned in both sections "are all specifically limited to a strike 'where an object of such strike or such acts or conduct is to force or require [the employer] to recognize or bargain with respondent,' *so long as the Board's certification of another labor union remains in effect.*" (Underscoring supplied.)[4] Accordingly, they contend that since the complaint alleges that Local 977, the certified union, disavowed its representation of plaintiff's employees and that the employees themselves stated that they no longer desired to be represented by Local 977 but by Local 259, the prior certification of Local 977 by the National Labor Relations Board was rendered ineffective and the employer was under no legal obligation to recognize it and so an essential element of a claim under Section 303(a)(3) is lacking.

The contention must fail. It disregards several important factors—that the National Labor Relations Board certification of Local 977 was outstanding and unrevoked, that plaintiff, under the terms of the collective bargaining agreement, was obligated to continue to recognize Local 977, and, further, that the renunciation by the employees was allegedly the result of inducements by the defendant-unions.

The premise that the mere disclaimer of the Board's certification by Local 977, supported by the renunciation of the employees, accomplished decertification and thus relieved the plaintiff of its legal obligation to recognize Local 977, ignores the decertification provisions of the Act. Section 9, 29 U.S.C.A. § 159, provides "a procedure by which they [employees] can assert that the Union is no longer their representative." Superior Engraving Co. v. National Labor Relations Board, 7 Cir., 183 F.2d 783, 794. No other method for decertification is contained in the Act.

The National Labor Relations Board has long invoked what it terms a one-year rule with respect to certification and decertification.[5] Section 9(c)(3) of the Labor Management Relations Act of 1947 implemented this administrative policy.

"A Board certification of a bargaining representative generally is an absolute bar to a new determination of representatives for 1 year. This long-standing Board policy is reinforced by section 9(c)(3) of the amended act, which prohibits the holding of a representation election less than 12 months after a prior valid representation election has been held in the same unit.

"In order to enable a newly certified union to establish bargaining relations, the Board seeks to assure it a year free of rival claims or decertification proceedings in which to negotiate a contract."[6]

The underlying purpose of the policy is not only to permit a certified union a reasonable period to negotiate, free of rival claims, but to carry out a major objective of the Act to secure industrial peace through collective bargaining agreements.[7] This purpose extends to employer and employee alike. "The purpose of the act is to insure collective representation for employees, and to that end § 9 gives power to the Board to

3. Labor Management Relations Act of 1947 (H.R.No.510, 80th Congress, First Session, p. 67).

4. Douds v. Local 1250, Retail Wholesale Dept. Store Union, 2 Cir., 170 F.2d 700, 701.

5. National Heat Treating Company, 95 NLRB 144; Snow & Nealley Company, 76 NLRB 390, 391.

6. Fifteenth Annual Report of the National Labor Relations Board, p. 74.

7. National Container Corp., 87 NLRB 1065 (1949).

supervise elections and certify the winners as the authorized representatives. Inherent in any successful administration of such a system is some measure of permanence in the results: freedom to choose a representative does not imply freedom to turn him out of office with the next breath. As in the case of choosing a political representative, the justification for the franchise is some degree of sobriety and responsibility in its exercise. Unless the Board has power to hold the employees to their choice for a season, it must keep ordering new elections at the whim of any volatile caprice; for an election, conducted under proper safeguards, provides the most reliable means. of ascertaining the deliberate will of the employees. How long the employees' undoubted power to recall an elected representative may be suspended, is a matter primarily, perhaps finally, for the Board; * * *." National Labor Relations Board v. Century Oxford Mfg. Corporation, 2 Cir., 140 F.2d 541, 542–543, certiorari denied 323 U.S. 714, 65 S.Ct. 40, 89 L.Ed. 574.

In line with long-established principles, the Board has also held that an existing collective bargaining agreement precludes a redetermination of representation for a reasonable period—usually one year.[8] This administrative policy has been fully recognized and approved in National Labor Relations Board v. Geraldine Novelty Co., 2 Cir., 173 F.2d 14:

"Consistently with the purpose of the Act to insure to employees the right to have a collective bargaining representative of their own choosing, the Board has established the administrative doctrine that once the representative has been certified, or recognized by contract, there must be some measure of permanence to the relationship. Such period of stability usually extends for about a year in the case of a certified union without a contract, or until near the end of the contract term, if a union contract exists. That this is a reasonable administrative

ruling this court has recognized in [citing cases]; * * *." 173 F.2d at pages 16–17.

To hold that a certified union, within one year of its certification and while a valid agreement made upon the basis of the certification is in existence, could effect self-decertification by a disclaimer of its representation assumes a power denied to the Board. Self-decertification during such a period and under such circumstances clearly was not within the contemplation of Congress. It must be presumed that the orderly procedure contemplated by Section 9 was intended as the sole and exclusive method for decertification.

The cases [9] relied upon by the defendants wherein informal decertification was recognized are inapposite. In each, some step in the decertification machinery of Section 9 had been initiated, and at an advanced stage of the procedure the Board recognized the futility of holding an election for such reasons as employee renunciation or disclaimer by the union where the evidence of such fact was clear and convincing. These decisions indicate merely that a mechanical step of the representation or decertification process may be dispensed with if justified by the facts.

The defendants also rely on National Labor Relations Board v. Vulcan Forging Co., 6 Cir., 188 F.2d 927. That case must be confined to the special circumstances appearing therein and its underlying rationale that it would be a futile matter to compel an employer to bargain collectively with an agent, which, in fact, did not represent the employees. To the extent that it is inconsistent with the rulings in this circuit in National Labor Relations Board v. Century Oxford Mfg. Corporation and National Relations Board v. Geraldine Novelty Co., supra, it cannot be followed.

Finally, and a most significant distinction, is that in each of the matters relied upon

8. Reed Roller Bit Co., 72 NLRB 927; Pacific Gamble-Robinson Company, 89 NLRB 293.

9. Federal Shipbuilding and Dry Dock Co., 77 NLRB 463; NY-Lint Tool and Manufacturing Co., 77 NLRB 642; International Harvester Co., 87 NLRB 1123; Hubach v. Parkinson Motors, 88 NLRB 1202; Aarmco Drainage and Metal Products Inc., 93 NLRB 751.

by the defendants, no agreement had been entered into with the certified collective bargaining representative. In the instant case, plaintiff negotiated and consummated an agreement in reliance upon the certification, and thus mutual and corelative rights were established. The duty of the employer was not only to negotiate in good faith with the certified union, but, having reached an agreement, also to observe it, including continued recognition. The agreement expressly provides: " * * * [T]he Company recognizes the Union as the sole and exclusive collective bargaining agency for all its employees." It is not claimed that the plaintiff consented to void this or any other provision of the agreement.

The further contention is made that what Congress sought to eliminate was the traditional jurisdictional dispute, placing the employer between the cross-fires of rival unions. Here, the defendants claim a consensual arrangement whereby, in effect, representation was transferred by the certified union to another. But a certified union has been held without power to transfer "the benefits of the certification * * * to a different organization without the Board's approval and consent." [10] Moreover, the Act of 1947 does not distinguish between friendly and hostile unions. The scope of Section 303 is not dependent upon the nature of the relations between certified and non-certified unions. In International Longshoremen's & Warehousemen's Union v. Juneau Spruce Corp., supra [342 U.S. 245, 72 S.Ct. 240], the issue involved a violation of acts prohibited under Section 303(a)(4), forcing or requiring the employer to assign particular work "to employees in a particular labor organization" rather than to employees "in another labor organization". One of the contentions urged by the defendant to defeat the employer's claim was that the recognized union was willing to surrender the work to it.[11] The plea was rejected by the Supreme Court. "The fact that the union of mill employees temporarily acceded to the claim of the outside group did not withdraw the dispute from the category of jurisdictional disputes condemned by § 303(a)(4)." 342 U.S. at page 245, 72 S.Ct. at page 240.

Finally, the defendants' position, if sustained, would tend to defeat the objectives of Sections 8(b)(4)(C) and 303(a)(3) of the Labor Management Relations Act of 1947. It would provide a simple and convenient method for a union within a year of its certification to disavow an existing agreement made in reliance upon the certification. It would result, as plaintiff here charges, in new and different demands for the unexpired period of the existing contract and lead to unsettled and chaotic conditions instead of an era of peaceful and stable industrial relationship. Thus, the very evils sought to be eliminated are created by the process of self-decertification. The history of the Act makes it clear that Congress could hardly have intended such a result.

■ The motion to dismiss the complaint upon the ground that it fails to state a claim against the defendants is denied.

■ There remains the final contention that diversity is necessary to confer jurisdiction of a claim arising under Section 303. In contrast to Section 301, which eliminates the requisites of jurisdictional amount and diversity, Section 303 removes only the monetary requirement. Defendants argue that by this omission, Congress intended that an action under Section 303 be subject to the diversity requirement. The majority rule is that diversity is not essential. Banner Mfg. Co. v. United Furniture Workers, D.C., 90 F.Supp. 723; L. Fatato, Inc., v. Beer Drivers Local Union 24, D.C., 93 F.Supp. 481. See also Schatte v. International Alliance, etc., 9 Cir., 182 F.2d 158, 165. Contra: Lach v. Hoisting & Portable Power, etc., Local 4, D.C., 86 F.Supp. 463.

Although not ruling expressly on the issue, the following language of the Supreme Court is significant: "The jurisdiction conferred by § 303(b) is made 'subject to the limitations and provisions of § 301'. Sec-

10. Allis-Chalmers Manufacturing Company, 62 NLRB 995, 996.

11. 9 Cir., 189 F.2d 177, 188.

690

tion 301 lifts the limitations governing district courts as respects the amount in controversy and the citizenship of the parties * * *. Congress was here concerned with reshaping labor-management legal relations; and it was taking precise steps to declared and announced objectives. One of those was the elimination of obstacles to suits in the federal courts." International Longshoremen's & Warehousemen's Union v. Juneau Spruce Corp., [342 U.S. 237, 241–242, 72 S.Ct. 238.] supra.

Congress' purpose in opening the Federal Courts for suit is served by dispensing with the diversity element. Section 303, which condemns activities which would otherwise be lawful,[12] creates new Federal substantive rights.[13] Thus, a claim under Section 303 is plainly an action arising under the laws of the United States and cognizable in a Federal Court under 28 U.S.C. § 1331 without regard to diversity.

The motion to dismiss the second claim for lack of jurisdiction is likewise denied.

Settle order on notice.

12. Douds v. Local 1250, Retail Wholesale Dept. Store Union, 2 Cir., 173 F.2d 764, 770, 9 A.L.R.2d 685.

13. Schatte v. International Alliance, etc., supra.