**AMERICAN RADIATOR & STANDARD SANITARY CORPORATION,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**
and
**Standard Allied Trades Council,**
Intervenor.

No. 16930.

United States Court of Appeals
Sixth Circuit.

Aug. 8, 1967.

J. Mack Swigert, Cincinnati, Ohio, for petitioner, William K. Engeman, Cincinnati, Ohio, on the brief, Austen B. McGregor, New York City, of counsel.

Gary Green, Atty., National Labor Relations Board, Washington, D. C., for respondent, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Edith Nash, Atty., National Labor

Relations Board, Washington, D. C., on the brief.

Jerry D. Anker, Washington, D. C., for intervenor, David E. Feller, Washington, D. C., Herbert L. Segal, Louisville, Ky., on the brief.

Before WEICK, Chief Judge, and O'SULLIVAN and McCREE, Circuit Judges.

O'SULLIVAN, Circuit Judge.

We consider a petition for review of, and a cross-petition to enforce, an order of the National Labor Relations Board (reported in 155 NLRB 736) finding American Radiator and Standard Sanitary Corporation (American Radiator) guilty of violating Section 8(a) (1) and (5) of the National Labor Relations Act, 29 U.S.C.A. § 158(a) (1) and (5).[1] The accused conduct was the alleged refusal of American Radiator to bargain and negotiate, on and after November 10, 1965, with the Standard Allied Trades Council (SATC) of Louisville, Kentucky, then bargaining representative of American Radiator's Louisville employees. We deny enforcement of the Board's order.

American Radiator operates plants manufacturing plumbing and heating products throughout the United States and Canada. It deals with many unions representing separate bargaining units. The employees at American Radiator's Louisville plant belong to some thirteen different local unions, which in turn elect delegates to a single bargaining representative, the Standard Allied Trades Council.

For some years prior to 1964, American Radiator had in force pension plans for all its employees. These had been negotiated between the company and the bargaining units at its several plants. The plans were basically the same, with local variations at each plant. For a long while, however, top level officials of various International Unions—UAW-CIO, Boilermakers' Union, Potters' Union (Canada), Industrial Union Division of AFL-CIO, Steelworkers' Union, IAM, and Teamsters Union—had been dissatisfied with the manner in which these pension plans were being negotiated. It was their belief that the individual bargaining units had been powerless to affect the terms of the pension plans, once the company had arrived at its policy with respect thereto. They decided to attempt the negotiation of a "national package," so that the same pension plan would be in effect for all of the American Radiator employees covered by collective bargaining agreements.

Meetings attended by representatives of these Internationals were consequently held in Washington, D. C., and Detroit, with the result that a six-man "Steering Committee" was formed, which included SATC's president, Robert Aubrey; this committee was to guide the efforts to establish a company-wide pension plan. The function of the Steering Committee is best disclosed by this excerpt from the minutes of one of the Washington meetings:

> "It was the unanimous decision of the delegates that no local union should agree to any changes in the Pension Plan until they are agreed to by the Steering Committee."

As one way to achieve the desired goal—in the words of the report which issued from the series of meetings, "a common settlement of the proposed pension plan"—some members of the Steering Committee would sit in with local union representatives at any future bargaining session involving pension discussions.

The pension agreement at the Louisville plant would be the first to expire—it would do so on November 30, 1964.

---

1. 29 U.S.C.A. § 158 reads, in part:
   "(a) It shall be an unfair labor practice for an employer—
   (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

   *     *     *     *     *

   (5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159 (a) of this title."

Several months prior to that time SATC requested a bargaining meeting to consider extending the agreement, and a session was scheduled for September 22. On that date four so-called "outsiders" (delegates from the Steering Committee) appeared at the meeting, in addition to the regular SATC (Louisville) representative. These men were from other cities, were not members of the Louisville SATC, and quite obviously came to support the drive for a "nationwide" package on pensions. After the company representative had the "outsiders" identify themselves, and after one had allegedly stated that they were there "to negotiate a national package," the company refused to go on with the meeting unless the "outsiders" left. The meeting was then adjourned.

This event was promptly followed by the SATC filing an unfair labor charge against American Radiator. Correspondence between the company and SATC ensued, in which the company reiterated its refusal to bargain over a nationwide plan, and its resistance to having "outsiders" participating in negotiations. The union —SATC—took the position that it was not, and had not been, demanding a nationwide contract, but insisted upon its right to have the "outsiders" participate in the meetings to aid the negotiation of a pension contract for the Louisville plant alone.

There was merit in each of their contentions: it was conceded by the General Counsel that the company could not be forced to negotiate a nationwide contract; and we have held that a union has the right to select outsiders to sit in and assist a local bargaining committee. Standard Oil Company v. NLRB, 322 F.2d 40, 43, 44 (CA 6, 1963). Because of these partially valid positions of the parties, the charge lodged against the company for its conduct in refusing to conclude the September 22 meeting was not referred to in the Regional Director's complaint which issued on December 16, 1964.

What was the basis of the complaint was a letter dated November 10, 1964, by American Radiator to the president of SATC which attempted to move forward with negotiations without waiting for Board resolution of the charges made by SATC relating to the September 22 meeting. The letter went as follows:

"Dear Mr. Aubrey:

"Mr. Gamber has asked me to answer your letter to him dated November 6, 1964.

"*We have never contested your right to select the members of your negotiating committee for negotiations or any other collective bargaining purpose.* Our negotiations, however, involve only the Louisville Bargaining Unit. They are private negotiations and have never been open to the public or to outsiders from other bargaining units outside Louisville.

"As you know, an unfair labor practice proceeding is now pending before the NLRB filed by your Union against our Company testing the rights of these outsiders to attend Louisville negotiations meetings. (Case No. 9–CA–3332). *May we suggest that while this matter is being decided, we continue negotiations on the same basis as in the past years, without the outsiders being present.* If it is finally determined in the NLRB proceedings that these outsiders have a right to be present, we must, of course, follow the law and so determine that they can resume attendance at the meetings under such conditions as may be set in the ruling.

"*This proposal will enable negotiations to resume immediately and we hope will result in an early and peaceful settlement of outstanding issues relating to the Pension Program.*

"*Please let us hear from you after you have given this matter consideration.*

"Very Sincerely,

"H. J. Brown, /s/
H. J. Brown, Manager
Industrial Relations."

(Emphasis supplied.)

There was no answer to this letter by SATC, but on November 30, 1964, the parties agreed to an indefinite extension of the existing pension contract, to continue until one or the other gave notice of terminating it. In January, 1965, SATC's president Aubrey gave such notice of termination, but suggested that the company begin pension negotiations, "under protest," with the "outsiders" present and assisting the SATC representatives. The company acquiesced, negotiations were held, and a new pension plan finally agreed upon.

The trial examiner rightly recited that "there is no substantial conflict in the evidence concerning the relevant facts." He concluded, however, that the company's letter of November 10, 1964, was a refusal to bargain and that it persisted in such refusal thereafter, including its bargaining "under protest" with the outsiders present. He said,

"In sum, I conclude and find that Respondent refused to bargain within the meaning of Section 8(a) (5) of the Act by its letter of November 10, 1964, by declining to meet with representatives selected by SATC to bargain on its behalf and thereafter by failing and refusing to meet with the selected negotiating committee of the Union."

And in his footnote 4 he expressed his view of the "under protest" meetings as follows:

"4. I do not consider that Respondent met its obligation at Louisville after January 15, 1965, by meeting, and purporting to bargain 'under protest.' The latter term connotes a sense of compulsion, restraint, and reluctance which is foreign, if not antithetic, to the freedom accorded to parties in collective bargaining to propose to consider and to engage in the give and take involved in good faith bargaining. Indeed, Section 8(d) emphasizes the freedom with which the parties may negotiate by providing specifically that the bargaining obligation does not compel agreement to a proposal or require the making of a concession. As concerns the statutory obligation, therefore, to bargain under protest seems no more than a contradiction in terms, negating any idea that the bargainer's consideration of, and reaction to, bargaining proposals can be free and voluntary."

██ The Board sustained its trial examiner, although it did not adopt the findings set forth in footnote 4 of the examiner's opinion. The Board's order cannot be upheld. The allegedly guilty conduct of the company consisted merely in writing a letter *suggesting* to the union a mechanism which would allow negotiations to continue; it asked for the union's consideration of the suggestion. This was followed by the company's acquiescence in the union's responsive counter suggestion.[2] In our view this does not add up to a refusal to bargain, violative of Section 8(a) (1) and (5). If the critical finding here could be viewed as a final inference of fact, it was not supported "by substantial evidence on the record considered as a whole". 29 U.S.C. § 160(e), and we are not concluded by it. Universal Camera Corp. v. NLRB, 340 U.S. 474, 490, 491, 71 S.Ct. 456, 95 L.Ed. 456 (1965). As a matter of law we can discern no evidence supporting the conviction of American Radiator of violation of the relevant statute.

Enforcement of the Board's order is denied.

2. It should be emphasized that the company did not after September 22 or November 10, refuse to participate in a bargaining session at which so-called outsiders were present. It did attend and bargain at such meetings "under protest" at the union's suggestion.