**LEAR SIEGLER, INC., Plaintiff-Appellant,**

v.

**INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW), and its Local No. 330, Defendants-Appellees.**

No. 19134.

United States Court of Appeals
Sixth Circuit.

Dec. 29, 1969.

John W. Cummiskey and Gordon J. Quist, Grand Rapids, Mich., Miller, Johnson, Snell & Cummiskey, Grand Rapids, Mich., on brief, for appellant.

A. Robert Kleiner, Grand Rapids, Mich., Morse & Kleiner, Grand Rapids, Mich., of counsel, for appellees.

Before WEICK, PECK and McCREE, Circuit Judges.

McCREE, Circuit Judge.

Lear Siegler, Inc., appeals from the granting of summary judgment to the defendant unions in an action brought by the company under Sections 301 and 303 of the National Labor Relations Act.[1]

When the action was first instituted, the company sought a declaratory judgment, temporary and permanent injunctions which would have had the effect of ending a strike then in progress, and damages. After judgment was entered, the parties reached agreement on a new collective bargaining contract, and the strike was terminated. This rendered the litigation moot except for the request for damages.

Since 1950, the UAW has been the exclusive bargaining agent for all production and maintenance employees, skilled and unskilled, in Lear Siegler's Wyoming, Michigan plant. On February 1, 1968, the collective bargaining agree-

---

1. 29 U.S.C. §§ 185, 187.

ment expired, and on April 1 the union struck. Negotiations for a new contract had begun before February, and a tentative agreement was reached by the negotiating teams on June 19.

The agreement was submitted to the employees in the bargaining unit which, for purposes of ratification, was divided into two groups, production workers and skilled workers, as permitted by the International's constitution. The production workers, who comprised about 90 percent of the bargaining unit, voted to ratify, but a majority of the skilled workers rejected the tentative agreement. The UAW, according to the company's complaint, notified Lear Siegler "that, in order to achieve ratification by the 'skilled' employees [the company] must recognize the skilled employees as separate and distinct from 'production' employees and must bargain separately with the 'skilled' employees as to their grievances, labor disputes, wages, rates of pay, hours of employment and conditions of work." This allegation was not denied, and the filing of a motion for a directed verdict (later converted into a motion for summary judgment) requires us to accept it as true. After this demand was made, Lear Siegler promptly filed its action in District Court.

## I

The District Court dismissed Lear Siegler's claim based on § 301 on the ground that there was no contract between the parties when the alleged breach occurred. The company contends that a contract came into existence on June 19, when a majority of the total bargaining unit voted for ratification of the tentative agreement. The company's theory apparently rests on the parties' past bargaining history.

■■■ We believe that the District Court's ruling was correct. A negotiat-

ing team, unless given power to bind its principal, usually reports the proposed agreement to the union membership which may ratify or reject the pact. The method of ratification, unless otherwise stipulated by the parties, is an internal concern of the union. *See* NLRB v. Wooster Division of Borg-Warner Corp., 356 U.S. 342, 78 S.Ct. 718, 2 L. Ed.2d 823 (1958). Until it ratifies the agreement and executes the formal instrument the contract does not become operative.

## II

■■■ We disagree, however, with the disposition of the § 303 claim. The company contends that the union was inducing or encouraging its members to engage in a strike to force the employer to bargain with a "labor organization" other than the labor organization which was the certified representative of the employees, in violation of § 8(b) (4) (i) (C) of the National Labor Relations Act.[2] It alleged that the union sought to compel Lear Siegler to bargain separately with the "skilled employees", and, in the posture of the litigation, we must accept this averment as true.

By granting summary judgment, the District Court determined as a matter of law that the "skilled employees" as described in Lear Siegler's complaint were not a "labor organization" under § 2(5) of the National Labor Relations Act.[3] We do not agree. Although Section 2(5) does not limit the power of a union to designate who shall bargain for it as negotiators and to insist that the employer bargain with them, American Radiator & Standard Sanitary Corp. v. NLRB, 381 F.2d 632 (6th Cir. 1967), nevertheless it clearly forbids a certified union to demand that an employer bargain with another union *qua* union.

2. 29 U.S.C. § 158(b) (4) (i) (C).

3. 29 U.S.C. § 152(5). The subsection reads:
   The term "labor organization" means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.

Pepper & Potter, Inc. v. UAW Local 977, 103 F.Supp. 684 (S.D.N.Y.1952). For example, the UAW here could not insist that the employer bargain with the International Society of Skilled Trades as to the wages and working conditions of Local 330's skilled members.

It is not always easy to draw a clear line between permissible and impermissible practices, and there will be borderline situations in which it will be difficult to determine whether a group of individuals to whom a certified union has delegated its bargaining power constitutes a "labor organization". Such situations are likely because, in a variety of contexts, courts have held that groups which lack some or all of the formal characteristics normally associated with labor unions are "labor organizations" under § 2(5). *See, e. g.*, National Packing Co. v. NLRB, 377 F.2d 800, 803 (10th Cir. 1967); NLRB v. Chardon Tel. Co., 323 F.2d 563 (6th Cir. 1963); NLRB v. Western Reserve Tel. Co., 323 F.2d 564 (6th Cir. 1963).

From the allegations of the complaint, to which our inquiry is restricted, we cannot determine as a matter of law that the "skilled employees" of Lear-Siegler's Wyoming plant are not such a group. Whether they are remains an issue which can be resolved only in further proceedings. Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962). When there is any doubt that allegations preclude the existence of a factual issue, summary judgment is not in order. Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944); United States v. Farmers Mut. Ass'n of Kiron, Iowa, 288 F.2d 560, 562 (8th Cir. 1962). We therefore hold that the District Court erred in granting summary judgment on the § 303 claim.

The judgment of the District Court is affirmed in part and reversed in part, and the case is remanded to the District Court for further proceedings not inconsistent with this opinion.