COLONIAL HARDWOOD FLOORING CO., Inc. v. INTERNATIONAL UNION UNITED FURNITURE WORKERS OF AMERICA et al.

Civ. No. 3804.

District Court, D. Maryland.

Feb. 16, 1948.

Earle Shawe, of Baltimore, Md., and Gerard D. Reilly and Charles Edward Rhetts, both of Washington, D. C., for plaintiff.

Jacob J. Edelman and Isidor Roman, both of Baltimore, Md., Weinstock & Tauber, of New York City, and Bernard J. Flynn, U. S. Atty., of Baltimore, Md., for defendants.

CHESNUT, District Judge.

The complaint in this case is in two counts. Count 1 is based on section 301 of the recent Act of Congress known as the Labor Management Relations Act, Public Law 101, 80th Cong., c. 120, 29 U.S.C.A. § 185, passed by the House and Senate June 23, 1947 over Presidential veto.

Section 301(a) authorizes suits for violation of contracts between employer and the labor organization representing employees in an industry affecting commerce, to be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy and without regard to the citizenship of the parties. Subsection (c) with respect to venue jurisdiction provides that—"district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members." and subsection (d) provides that the service of summons upon an officer or agent of a labor organization which *is accepted*, constitutes service upon the labor organization.

The plaintiff is a Maryland corporation engaged in the manufacture of woodwork in the City of Hagerstown, Maryland. One of the defendants is the International Union United Furniture Workers of America (a so-called national Union). It has its principal office in New York City. The other defendant, United Furniture Workers of America, Local 472, is a local Union having its principal business offices at Hagerstown, Maryland. Annexed to the complaint is a copy of the contract between the plaintiff and the defendants. Among other provisions is elaborate and detailed procedure for settlement of grievances with arbitration if necessary. Article 4, s.1(k) provides as follows: "(k) During the life of this agreement, the Company (plaintiff) agrees that there shall be no lock-outs and the Union agrees that it will not cause or permit its members to cause nor will any member of the Union take part in any strike or stoppage of work. It is understood and agreed that the grievance procedure provided in this Article shall be the only method for settling disputes which are the subject of this agreement."

The complaint states that the contract was executed December 18, 1946, retroactive to October 15, 1946, and to continue until October 15, 1947, and from year to year thereafter unless sooner terminated; but that on August 13, 1947, the International Union gave notice of termination on October 15, 1947.

The complaint alleged that contrary to the express provision of the contract on or about October 3, 1947, the defendants

caused a strike or stoppage of work at the plaintiff's furniture plant in consequence of which it sustained substantial damages.

Count 2 of the complaint is based on section 303 of the Labor Management Relations Act, 29 U.S.C.A. § 187, which, shortly stated, prohibits secondary boycotts. The count alleges the occurrence of a secondary boycott by the defendants with consequent substantial damage to the plaintiff's business. This provision of the statute has recently been applied by Judge McCormick of the Southern District of California in LeBaron v. Printing Specialties and Paper Converters Union, D.C., 75 F.Supp. 678; cf. Douds v. Metropolitan Federation, D.C. 75 F.Supp. 672.

The several grounds for the motions raise different types of questions including procedural matters and matters of substantive law with respect to construction of the contract, and matters of constitutional law. The defendants separately have filed motions to dismiss the complaint on many separate grounds. They will be considered separately and briefly at this time.

■ First as to the procedural matters. It is contended that there was a misjoinder of causes of action in that the first count is based on the contract and the second on tort. This is not a tenable ground for dismissing the suit under the new federal civil procedure rules.

■ The next objection is that the International Union is not suable in the district court of Maryland by reason of the general venue statute providing that a defendant is to be sued only in the district in which it is an inhabitant. Code 1939, art. 75, § 157. It will be noted, however, that section 301 provides a particular venue for suits brought under the Act, and permits the suit "in any district in which its (the Union's) duly authorized officers or agents are engaged in representing or acting for employee members." The complaint as originally filed did not contain this express allegation but at the hearing an amendment was permitted to incorporate it in the complaint. It is also to be noted that the marshal's return of process shows service of summons on the International Union United Furniture Workers of America by service on Michael Tyson, its agent, and copy of summons and complaint left with him November 17, 1947. There has been no motion to quash the service of summons.

■ It is also contended that the copy of the contract filed with the complaint does not show a formal execution of the agreement by the International Union. However, the complaint in substance alleges the existence of the contract with both defendants and the copy of the contract itself purports to have been made between the plaintiff and both defendants. The form of execution of the contract by the defendants reads as follows:

> "For United Furniture Workers
> Local Union No. 472
> Signed by:
> Sam Fox, Int. Rep. UFWA
> Joseph Miller
> Henry Head"

Whether the contract was in fact executed by the International Union may be doubtful but should be left for determination on the evidence. For the present, therefore, the motion for dismissal of the Internation Union from the case is overruled.

■ Apparently the ground for dismissal most earnestly urged in the oral and written arguments of counsel for the defendants is that the complaint fails to state sufficient cause of action in that the plaintiff should have resorted under the contract to arbitration instead of to suit. This involves construction of the contract. The point contended for is that there can be no suit for the damages caused by the strike until after resort to and award under arbitration. Specifically what is asked is that the suit be stayed pending arbitration under the authority of the Federal Arbitration Act of February 12, 1925, c. 213, § 3, 9 U.S.C.A. § 3. And reference is made in that connection to certain federal cases construing the applying the latter named Act. Agostini Bros. Bldg. Corp. v. United States, 4 Cir., 142 F.2d 854; Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 2 Cir., 70 F.2d 297, affirmed 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583; and Donahue v. Susquehanna Collieries Co., 3 Cir., 138 F.2d 3, 149 A.L.R. 271. These cases are to the effect

that where suit is brought in the federal court under a contract providing for arbitration, the suit may be stayed pending the arbitral award. But I regard the Act and the cases applying it inapplicable to this contract. The proper construction of the contract shows very clearly that the purpose of the arbitration provision was to prevent a strike, with the consequent stoppage of work, and not to arbitrate a strike after it had occurred, contrary to the express provisions of the contract.

The defendants also raise various constitutional questions. First it is said that the court is without jurisdiction of the case in the absence of diversity of citizenship. The point made is that under Article III of the Constitution judicial power is limited to cases of diverse citizenship or to cases arising under the Constitution, Treaties or laws of the United States; and that the controversy in this case does not arise under a law of the United States. See Barnhart v. Western Maryland Ry., D.C. Md., 41 F.Supp. 898, affirmed 4 Cir., 128 F.2d 709. But I think this contention untenable here. Osborn v. Bank of United States, 9 Wheat. 738, 6 L.Ed. 204; Markham v. Allen, 326 U.S. 490, 66 S.Ct. 296, 90 L.Ed. 256. The Labor Management Act creates important substantive rights between employers and employees engaged in interstate commerce, and section 301 expressly authorizes suits of this character in district courts of the United States. It is clearly, therefore, a suit arising under a law of the United States.

The constitutionality of section 301 is also challenged on the ground that it violates the due process clause of the Fifth Amendment in its alleged retrospective operation on contracts existing prior to the passage of the Act. But in my opinion the Act is prospective and not retrospective in charcter. It is not made retrospective merely because it gives additional remedies for the future breach of then existing contracts.

The same constitutional objection is urged as to section 303 of the Act but is equally untenable, at this stage of the case.

It is also urged that section 303 of the Act violates the First Amendment of the Federal Constitution in that it interferes with the right of free speech. This objection has not been very fully discussed and does not presently seem to me to be tenable.

And it may be further observed with respect to these constitutional questions that at the present stage of the case they could only be sustained if valid on the mere face of the statute, without further light to be obtained by the court from the evidence in the case with respect to the actual operation of the Act, and its impact on the parties to the case under the particular facts of the case. In a number of recent cases the Supreme Court has pointed out the inadvisability of deciding grave constitutional questions with respect to newly enacted statutes on motions to dismiss and without the benefit of a hearing of the facts of the case. See, for instance, United States v. Petrillo, 332 U.S. 1, 67 S.Ct. 1538.

As an alternative to their motion to dismiss the defendants also demanded a bill of particulars with respect to various features of the complaint. An examination of the demand shows quite clearly that the purpose of the demand is to facilitate preparation of defense rather than as to the nature of the answer. Much has been said recently with respect to the procedural point as to the demand of bills for particulars. While still authorized by the civil procedure rules until the amendments thereto approved by the Supreme Court shortly hereafter are to take effect, I think the demand should be overruled in this instance because the object of the defendants' action can be better subserved by utilizing the discovery provisions of the rules.

For these reasons the several motions of the defendants are hereby overruled. The defendants may answer within twenty (20) days.