**SHIRLEY–HERMAN CO., Inc. v. INTERNA-TIONAL HOD CARRIERS, BUILDING & COMMON LABORERS UNION OF AMERICA, LOCAL UNION NO. 210.**

No. 205, Docket 21619.

United States Court of Appeals
Second Circuit.

Argued May 3, 1950.

Decided May 29, 1950.

Anthony Manguso, of Buffalo, N. Y., for appellant.

Frank G. Raichle, of Buffalo, N. Y. (Edward D. Flaherty, of Buffalo, N. Y., on the brief), for appellee.

Before L. HAND, Chief Judge, and CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

Plaintiff, an employer, has recovered a verdict against the defendant union in an action brought under the Taft-Hartley Act for damages for work stoppage in violation of a collective bargaining agreement. Labor Management Relations Act of 1947, § 301, 29 U.S.C.A. § 185. Defendant's appeal from the resulting judgment brings up various attacks upon the rulings of the trial judge holding the law here applicable and controlling and submitting the issue of breach to the jury.

Plaintiff is a general contracting company engaged in construction work in the city of Buffalo. It is a member of an association known as General Contracting Employers Association. This association entered into a contract with the defendant union which provided that the latter was to furnish all the men needed for contracting work in that area, and specified the conditions of employment. Article V of that contract, entitled "Arbitration," first stated: "Should differences arise between the parties to this Agreement as to the meaning and application of the provisions of this agreement or should any trouble of any kind arise, there shall be no cessation of work caused by either the employer or the Union and the conditions in effect at the time the difference arises shall be continued by the parties, but such difference or dispute shall be settled in the following manner:" It then went on to set forth grievance procedures, culminating in compulsory arbitration, with the decision of the arbiter final and binding on both parties.

In September, 1948, plaintiff commenced the excavation and concrete work required for certain sprinkler systems in process of installation at two of the plants of the

American Radiator & Sanitary Corporation, which, as the parties stipulate, was a corporation engaged in interstate commerce. The defendant union, under its contract, furnished the labor for each of these jobs. The work on both jobs continued until November, 1948, when differences arose between the plaintiff and the defendant over wage rates. The labor furnished by the union went on strike and left the jobs in the latter part of that month. That the work stoppage was with the procurement and connivance of the union is substantially undisputed in the record. The testimony also showed that the plaintiff sought to obtain labor in accordance with its contract with the union, and both orally and in writing offered to arbitrate the dispute and make retroactive any increased wage which might be awarded. The men were not, however, returned to work.

During the time that the work was left standing the trenches already excavated by the plaintiff filled in with earth and water, some of the shoring fell in, and much of the work already done had to be done over again. Early in 1949 plaintiff let the work of completing each of the two jobs to another contractor. There was evidence that at the time of the work stoppage each of the two jobs involved could have been completed for another thousand dollars, but because much of the work had to be redone, plaintiff was obliged to pay the new contractor $16,169.17 to complete the work. Thus it complained that it was damaged to the extent of $14,169.17. The jury's verdict in its favor was for $8,500.

Defendant's most serious attack upon the judgment below is that the case is not within the terms of the Act and hence was without the jurisdiction of the district court. Under § 301 (a) of the Act, 29 U.S.C.A. § 185 (a), the action over which the court is given jurisdiction must be one for violation of contract "between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter." "Industry affecting commerce" is defined in § 501 of the Act, 29 U.S.C.A. § 142, as "any industry or activity in commerce or in which a labor dispute

would burden or obstruct commerce or tend to burden or obstruct commerce or the free flow of commerce." Defendant contends at length that this dispute was not in an "industry affecting commerce"; but that contention appears answered by our decision in International Brotherhood of Electrical Workers, Local 501 v. N. L. R. B., 2 Cir., 181 F.2d 34, 36, where we said: "It is now abundantly established that in the Labor Relations Acts Congress meant to exercise to the fullest extent its power over interstate commerce." That case involved a dispute between a union and an electrical contractor from New York who was engaged in the building of a home in Connecticut and who used some materials brought in from New York. We found the dispute to be in an "industry affecting commerce" and held that the Labor Management Relations Act was applicable.

▮ That the dispute here is in an "industry affecting commerce" is even more clear than in the Electrical Workers case, supra. The work stoppage resulted in slowing up the installation of sprinkler systems for two plants of the American Radiator & Sanitary Corporation, which is concededly engaged in interstate commerce. We cannot say that the delay in getting the sprinkler systems may not have obstructed the free flow of radiators into the stream of interstate commerce. Further, the cement, lumber, steel, gasoline, and oil used on the jobs were shipped in from without the state. Thus commerce was affected by this dispute and the Labor Management Relations Act applies. N. L. R. B. v. Fainblatt, 306 U.S. 601, 59 S.Ct. 668, 83 L.Ed. 1014; J. L. Brandeis & Sons v. N. L. R. B., 8 Cir., 142 F.2d 977, certiorari denied 323 U.S. 751, 65 S.Ct. 85, 89 L.Ed. 601; Butler Bros. v. N. L. R. B., 7 Cir., 134 F.2d 981, certiorari denied 320 U.S. 789, 64 S.Ct. 203, 88 L.Ed. 475. Defendant's citations of cases dealing with other and differently framed legislation are not therefore particularly pertinent.

▮ On this view defendant's objection that New York law requires plaintiff to show bad faith, and further, that an action can be maintained only if all the

members of the union are jointly or severally liable, becomes irrelevant. This contention is meaningful only on the view that § 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185, merely conferred jurisdiction upon the federal courts to entertain the action, and that the substantive principles of law to be applied must be those of New York. But § 301 goes further than defendant conceives; it created a remedy where none existed before and provided a forum in which to enforce it. Wilson & Co. v. United Packinghouse Workers of America, D.C.S.D.N.Y., 83 F.Supp. 162, 165; Colonial Hardwood Flooring Co. v. International Union United Furniture Workers of America, D. C. Md., 76 F.Supp. 493, 496, see s.c., International Union United Furniture Workers of America v. Colonial Hardwood Flooring Co., 4 Cir., 168 F.2d 33; Section 301 (A) of the Taft-Hartley Act: A Constitutional Problem of Federal Jurisdiction, 57 Yale L. J. 630; Wallace, The Contract Cause of Action under the Taft-Hartley Act, 16 Brooklyn L. Rev. 1, 15-20; 35 Corn. L. Q. 651. Thus the section imposes liability despite the lack of actual authorization or ratification of the acts of union agents. It makes unions suable as entities. It provides for judgments to be recoverable from the union's assets. And the report of the Senate Committee on Labor and Public Welfare, which considered this bill, noted that "to encourage the making of agreements and to promote industrial peace through faithful performance by the parties, collective agreements affecting interstate commerce should be enforceable in the Federal courts." The Committee then said that the difficulty at that time was that "there are no Federal laws giving either an employer or even the Government itself any right of action against a union for any breach of contract. Thus there is no 'substantive right' to enforce, in order to make the union suable as such in Federal courts." Sen. Rep. No. 105, 80th Cong., 1st Sess., 15-17. From this language it must be supposed that the Committee intended its legislation to supply the substantive remedy which it thought needed. And the report of the House Com-

mittee on Education and Labor also seems to contemplate a generally applicable and uniform federal substantive right. H. R. Rep. No. 245, 80th Cong., 1st Sess., 46.

■ The right thus created makes no requirement that bad faith be shown. In view of the overriding power of Congress to regulate interstate commerce, it must be upheld and state law as to bad faith is therefore of no relevance. Philco Corp. v. Phillips Mfg. Co., 7 Cir., 133 F.2d 663, 148 A.L.R. 125; O'Brien v. Western Union Telegraph Co., 1 Cir., 113 F.2d 539. Hence the district court was correct in refusing to dismiss the complaint and in charging the jury to the contrary of the defendant's contentions.

■ Defendant further contends that the arbitration provisions of the contract are illegal and unenforceable, on the ground that contracts of employment in interstate commerce are excluded in § 1 of the United States Arbitration Act, 9 U.S.C.A. § 1, and also because such a provision as that contained in the contract here deprives workers of their right to strike. But the exclusion from the Arbitration Act does not prevent such employees as these from agreeing contractually to arbitration. As Judge Parker said in International Union United Furniture Workers of America v. Colonial Hardwood Flooring Co., 4 Cir., 168 F.2d 33, 35: "This is not to say, of course, that such workers and their employers may not agree to arbitrate their differences, but merely that the provisions of the United States Arbitration Act do not apply to their agreements." The constitutional right of the employees to strike is not impaired by their voluntary agreement to forego use of that weapon. Nor do "no-strike" clauses such as this defeat the jurisdiction of the National Labor Relations Board, and thus prevent the purposes of the Labor Management Relations Act, 29 U.S.C.A. § 141 et seq., from being carried out. In fact, the Board itself has said that such clauses as this "tend to realize the purposes of the Act by encouraging the practice and procedure of collective bargaining rather than resort to industrial warfare." In re National

810

Electric Products Corp. and United Electrical Radio and Machine Workers of America, 23 L.R.R.M. 1148. We should thus have a better basis than any here advanced before we attempt to strike down a clause which appears to promote peaceful labor relations rather than otherwise.

 Defendant's further assignments of error we likewise find without merit. The first of these, that the damages awarded were excessive because plaintiff failed to minimize its loss, is a question for the jury and beyond the scope of our review, unless there was error in the charge. But Judge Burke's charge on this point was strongly worded in the defendant's favor, and defendant expressed no dissatisfaction with it. Hence since the damages awarded were well within the bounds set by the evidence, the court committed no error in refusing to set aside the verdict. Nor was there error in the court's refusal to permit parol evidence bearing on the merits of the dispute which gave rise to the work stoppage. The original dispute had concerned an exception in the contract making the wage rates inapplicable to "licensed plumbers' work" and was particularly whether "plumbers' laborers" came within the exception and thus would command a higher wage than other laborers within the contract; defendant desired to present parol evidence as to the negotiations to show what was meant by the latter term. But the court correctly limited the issue before the jury to the single question whether the union had caused a "cessation of work" without going to arbitration. The merits of the dispute were of no moment, since the union had promised that regardless of the nature of a dispute which might arise, it would not cease work but would keep on the job until the dispute was settled by the machinery provided for in the contract. This, as the jury found, the union had not done. Hence this record discloses no error. It is apparent that the union's real quarrel is with the new labor legislation, but that does not provide matter for judicial adjudication.

Judgment affirmed.