**SQUARE D CO.**

v.

**UNITED ELECTRICAL, RADIO &
MACHINE WORKERS OF
AMERICA et al.**

No. 13315.

United States District Court
E. D. Michigan, S. D.

July 23, 1954.

Goodman, Crockett, Eden & Robb, Detroit, Mich., for plaintiff.

Clark, Klein, Brucker & Waples, Detroit, Mich., for defendant.

KOSCINSKI, District Judge.

This suit was filed under the provisions of Title III, Sec. 301 of the Labor-Management Relations Act of 1947, popularly known as the Taft-Hartley Act, Title 29 U.S.C.A. § 185.

Plaintiff is a Michigan Corporation which, according to allegations in its complaint, is engaged in the manufacture and distribution of electrical equipment and parts for similar equipment manufactured and processed by others throughout the country; some of its products are utilized by various departments of the Government, such as the Corps of Engineers and the Atomic Energy Commission, and also by several large aircraft companies producing military aircraft for the Government.

Defendant, United Electrical, Radio and Machine Workers of America, is an international labor organization and defendant, Local 957, is a local affiliated with and chartered by the international organization. Both organizations are unincorporated voluntary associations. Reference to these two defendants will hereinafter be made as the "International" and the "Local", respectively.

Of the remaining defendants, Mates is the international representative of the International and Kelly is the business manager of the Local, while the others have been, during the periods of time pertinent here, or still are, stewards and members of the Executive Committee of the Local.

Plaintiff entered into a collective bargaining agreement with the Local on June 2, 1952, said agreement to remain in effect up to and including May 16, 1954. Neither the International nor any of the individual defendants are parties to this contract although some of the

individual defendants signed it in their capacity as officers of and on behalf of the Local which could only act through agents and representatives. In the agreement plaintiff recognizes the Local as the sole collective bargaining agency for its hourly paid factory and cafeteria employees, approximately 1,140 in number. Some of the pertinent provisions of the agreement are:

Article XVI establishes grievance procedure for adjustment of grievances, enumerating five steps in such procedure.

Sec. 5 of this Article provides that should any condition arise over grievances, there shall be no suspension, slowdown or stoppage of work, or lock-out, until such grievance procedure has been exhausted.

Sec. 6 of this Article absolves the International, the Local, and officers, agents or representatives of both, from liability to the Company in any action at law for damages arising out of any interruption of the Company's operations, in violation of the agreement, if such interruption is neither authorized nor supported by them. The Union and its officers, agents and representatives agree to take immediate steps to remedy the condition, including posting of notices.

This Article further provides that should any such violation occur the Union and the Company agree that their exclusive remedy for such violation shall be in accordance with the provisions of this agreement.

The complaint charges that, contrary to their undertakings and agreements under this contract, and in violation of said agreement, defendants engaged in a deliberate and calculated plan to interfere with, suspend and stop plaintiff's production, by inducing the breach of said contract by plaintiff's employees, by ordering strikes, walkouts, suspensions and other stoppages of work; that the individual defendants, jointly and severally, acted to accomplish these unlawful actions and confederated and conspired together and have singly and in concert induced plaintiff's employees to breach said agreement, by engaging in such concerted actions; that all of the defendants induced the individual employees of plaintiff, singly and in concert, to disobey and oppose the lawful requirements of plaintiff under said contract, as a direct result of which unlawful conduct plaintiff's employees engaged in strikes, walkouts, suspensions and other stoppages of work on October 23, 1953, again on November 2, 1953, and also on February 15, 1954; that not only did defendants incite and induce the employees to breach the contract, but they utterly failed to take the necessary steps to remedy and terminate said condition, contrary to the express undertakings contained in said contract and contrary to the duty of said defendants arising under said contract; that plaintiff has performed its obligations under the agreement and made a demand upon defendant unions to cease its unlawful acts, without result; that as a result of said unlawful conduct production in plaintiff's plant was stopped and resulted in damage to plaintiff to the extent of $210,000, for which it asks judgment.

There is no allegation in the complaint as to citizenship of the individual defendants.

The two unions and some of the individual defendants filed a motion to dismiss this action on the grounds that (1) the complaint fails to state a cause of action; (2) no action may be maintained against the individual defendants under Sec. 301 of the Taft-Hartley Act; (3) the International is not a proper party defendant under the Act since it is not a party to the contract sued upon; (4) plaintiff failed to exhaust grievance and arbitration procedures for settlement of its dispute as provided in the contract and as required by the United States Arbitration Act, 9 U.S.C.A. § 1 et seq.; (5) under Article XVI, Sec. 6 of the agreement plaintiff is barred from bringing this action; and (6) this court is without jurisdiction, under the Act, to try the issues relating to an alleged conspiracy to breach a contract, set forth in the complaint. In an amendment to the motion defendants ask, in the alterna-

tive, if the court does not grant the motion to dismiss, that all further proceedings herein be stayed under Rule 12(b) (1) of the Federal Rules of Civil Procedure, 28 U.S.C.A. and Title 9 U.S.C.A. § 3, Arbitration Act, until arbitration of the issues involved in this action shall have been held.

Copies of the agreement between plaintiff and the Local, as well as of the International's Constitution and By-Laws, are attached to the motion, together with a supporting affidavit.

Plaintiff relies solely upon Sec. 301 of the Taft-Hartley Act for jurisdiction of this court. That statute authorizes suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce, as defined in the Act, or between any such labor organizations, to be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties; it provides that any labor organization which represents employees in an industry affecting commerce may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States; and another provision of the Section is to the effect that any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets.

Does the complaint state a cause of action against all of the defendants under Sec. 301, cognizable in federal courts?

█ This question must be answered in the affirmative insofar as the defendant Local is concerned since the complaint meets the test of the statutory requirements and adequately states a claim which can be asserted under Sec. 301. The answer is not as readily determined insofar as the International and the individual defendants are concerned.

The statutory language employed in Sec. 301 gave rise to considerable confusion and resulted in lack of uniformity in its interpretation. The statute is not specific as to who may sue or be sued and it is inconclusive in other respects.

█ Courts confronted with interpretation of Sec. 301 to date dealt primarily with situations in which defendants questioned rights of individual plaintiffs to invoke this statute for jurisdiction of the federal court. The law is now fairly well established that only a union or an employer association, entering into collective bargaining agreements, can bring the action, rather than individual members of such organizations. Schatte v. International Alliance, etc., D.C.Cal.1949, 84 F.Supp. 669, affirmed 9 Cir., 182 F.2d 158, rehearing denied 9 Cir., 183 F.2d 685, certiorari denied 340 U.S. 827, 71 S.Ct. 64, 95 L.Ed. 608, rehearing denied 340 U.S. 885, 71 S.Ct. 194, 95 L.Ed. 643; United Protective Workers of America v. Ford Motor Co., 7 Cir., 1952, 194 F.2d 997; MacKay v. Loew's Inc., D.C.Cal., 84 F.Supp. 676, affirmed 9 Cir., 182 F.2d 170, 18 A.L.R. 2d 348, certiorari denied 340 U.S. 828, 71 S.Ct. 65, 95 L.Ed. 608, rehearing denied 340 U.S. 885, 71 S.Ct. 194, 95 L.Ed. 643; Reed v. Fawick Airflex Co., D.C.Ohio 1949, 86 F.Supp. 822; Durkin v. John Hancock Mutual Life Ins. Co., D.C.N.Y.1950, 92 F.Supp. 893; Waialua Agr. Co. v. United Sugar Workers, D.C. Hawaii 1953, 114 F.Supp. 243. See also Annotation in 17 A.L.R.2d beginning on page 619.

Plaintiff concedes that individuals may not maintain the action but denies that the converse is true and challenges the existence of any precedent for the proposition that an individual member of a union may not be sued in an action filed under Sec. 301. But in the Schatte v. International Alliance case, supra, the court, after reviewing the legislative history of the act, concluded that by Sec. 301 Congress intended to provide a forum, other than the street, for settlement of asserted violations of labor contracts by law suits, the *parties* to which

could only be the parties to the contract involved, i. e., either the employer or the labor organization. In Wilson & Co. v. United Packinghouse Workers, D.C.N.Y. 1949, 83 F.Supp. 162, the court determined that Sec. 301 must be interpreted as creating new substantive rights *in each of the parties to a labor contract to the observance and performance* of such contracts *by the other*. Section 301 was held to restrict actions to suits between an employer and a labor organization or suits between labor organizations. Zaleski v. Local 401 of United Electrical, Etc. Workers of America, D.C.N.J.1950, 91 F.Supp. 552. In another case, plaintiff, *a stranger to the contract* involved in suit, was held to have no standing to maintain an action under the Taft-Hartley Act. Isbrandtsen Co. v. Local 1291, Etc., D.C.Pa.1952, 107 F.Supp. 72, affirmed 3 Cir., 204 F.2d 495. Sec. 301 has reached only parties occupying the status of employers and labor organizations, as defined by the Act, according to the decision in International Longshoremen's & Warehousemen's Union, Local 142 v. Libby, McNeill & Libby, D.C., 114 F.Supp. 249.

Decisions interpreting Sec. 301 are replete with excerpts from the legislative history of the Act and resort thereto has been made by this court in an effort to determine the purpose which the Act was intended to accomplish. The Report of the Senate Committee on Labor and Public Welfare, which considered the bill, noted that its purpose was to encourage the making of agreements and to promote industrial peace through the *faithful performance* of such contracts *by the parties*. Cf. Shirley-Herman Co. v. Internat'l Hod Carriers, Etc., 2 Cir., 1950, 182 F.2d 806, 17 A.L.R.2d 609. The House Conference Report No. 510, on H.R. 3020, 80th Cong., 1st Sess., 1947, pp. 41–42, U.S.Code Cong. Service, 1947, p. 1147, contains this statement: " * * once parties have made a collective bargaining contract the *enforcement* of the contract should be left to the usual processes of the law and not to the National Labor Relations Board." Cf. Interna-

tional Union of Operating Engineers, Local No. 181 v. Dahlem Const. Co., 6 Cir., 193 F.2d 470. By Sec. 301 Congress provided a method of enforcement of such contracts against unions, as entities, in federal courts. In United States v. Brotherhood of Locomotive Engineers, D.C.D.C.1948, 79 F.Supp. 485, certiorari denied 335 U.S. 867, 69 S.Ct. 137, 93 L.Ed. 412, on remand 85 U.S.App.D.C. 417, 174 F.2d 160, certiorari denied 338 U.S. 872, 70 S.Ct. 140, 94 L.Ed. 535, the court expressed the view that the purpose of the Act, among other things, was to equalize the National Labor Relations Act so that it would no longer be one-sided, H.Rep.No.510, § 1126, 80th Cong. 1st Sess. p. 31, and that Sec. 301 is a necessary part of the Act to make it two-sided by providing for enforceability of such contracts against unions as entities, in federal courts.

Senator Murray said, Cong.Record, p. 4153, March 25, 1947, that this Section permits suits *by and against a labor organization*. Senator Smith made this statement, Cong.Record, p. 4410, April 30, 1947: "Title III * * * merely provides for suits by and against labor organizations, and requires that labor organizations, as well as employers, shall be responsible for carrying out contracts legally entered into as the result of collective bargaining. *That is all* that Title III does." The Conference Report also refers to Sec. 301 of the Senate amendment as containing provisions relating to suits *by and against labor organizations* in the United States courts.

It is readily apparent that Congress was largely concerned with enforceability of collective bargaining agreements against a union, as an entity, since, under many state laws, for all practical purposes unions were often immune from contract violation actions. Sec. 301 authorized actions against these labor organizations, as entities, in federal courts, eliminating the existing difficulty of enforcing the contracts in state courts and establishing a uniform system under which unions, as well as employers, may be sued. It follows, as a necessary

corollary, that Sec. 301 was directed at unions, to enforce contracts into which they entered, rather than at individual members thereof.

Actions against strangers to the contract, but in some manner relating to the contract, which could be asserted in state courts or in federal courts, if jurisdictional requirements were met, were left undisturbed by Sec. 301.

■ Preservation of our federal system requires the federal courts to give due regard to the rightful independence of state governments by scrupulously confining their own jurisdiction to precise limits defined by statute. Healy v. Ratta, 292 U.S. 263, 270, 54 S.Ct. 700, 78 L.Ed. 1248; City of Indianapolis v. Chase National Bank, 314 U.S. 63, 67, 62 S.Ct. 15, 86 L.Ed. 47. Cf. Silverton v. Rich, D.C.Cal.1954, 119 F.Supp. 434.

■■ This court concludes that Sec. 301 can be invoked only by or against a party to the collective bargaining agreement on which an action is founded and jurisdiction of the court thereunder does not extend to controversies between one of the contracting parties and a stranger to the contract. Hence, this court does not have jurisdiction under Section 301 to determine plaintiff's claims against the International or the individual defendants.

Plaintiff places strong reliance on the case of R. O. Stenzel & Co. v. Department Store Package, Etc., D.C.Mo.1951, 11 F.R.D. 362, in which a complaint for damages for breach of contract and for an alleged conspiracy to breach the contract was sustained. Jurisdiction in that case was asserted under Sec. 301 as well as Sec. 303, Title 29 U.S.C.A. § 187, of the Taft-Hartley Act. Sec. 303 pertains to boycotts and other unlawful combinations and gives a right of action to whoever shall be injured in his business or property by reason of any violation of that particular Section, in any district court of the United States, subject to the provisions of Sec. 301, without respect to the amount in controversy, or in any other court having jurisdiction of the parties. Apparently the breach of contract cause was sustained under Sec. 301 and the conspiracy under Sec. 303.

■ A motion to dismiss for failure to state a claim should not be granted, unless it appears certain that the plaintiff would not be entitled to relief under any set of facts proved in support of his claim as stated. American Federation of Labor v. Western Union Tel. Co., 6 Cir., 1950, 179 F.2d 535.

Despite plaintiff's sole reliance upon Sec. 301 for jurisdiction, it should be determined whether on the basis of the allegations in the complaint, jurisdiction on other grounds than Sec. 301 is conferred. Sec. 303 is of no avail to plaintiff. Its complaint charges the International and the individual defendants with inducing plaintiff's employees to strike but Sec. 303 makes such conduct actionable only against a labor organization and only if the object of such conduct was to accomplish the purposes specified in that section. H. N. Thayer Co. v. Binnall, D.C.Mass.1949, 82 F.Supp. 566. The complaint is inadequate under Sec. 303 both as to the International and the individual defendants. A number of decisions have been found in which both conspiracy or inducement to strike had been charged jointly with actual breach by the contracting parties, but in such actions the causes were stated in separate counts, alleged separate bases of jurisdiction, either under Sec. 303 or by reason of diversity of citizenship. This is not the situation here.

■ Diversity is not alleged against the individual defendants and in all likelihood they are residents of this state since they are regularly employed by plaintiff in its plant at Detroit. The International is sued as an entity, but under Rule 17(b) an unincorporated association, which has no such capacity by the law of the state in which the district court is held, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States, and no such right is shown by the pleadings. Sec.

301(b) of the Taft-Hartley Act, providing that a labor organization may sue or be sued in the courts of the United States as an entity, does not enlarge the class of cases over which district courts were given jurisdiction but merely made clear the capacity of labor organizations to come or be brought into court as parties. Amazon Cotton Mill Co. v. Textile Workers Union, 4th Cir., 1948, 167 F.2d 183, reversing, D.C., 76 F.Supp. 159. Cf. Murphy v. Hotel & Restaurant Emp. & Bar. Inter. Union, D.C.Mich.1951, 102 F.Supp. 488.

■ Plaintiff contends that this Court, having acquired jurisdiction of the case under Sec. 301, acquires jurisdiction of the case as an entirety, possessing as an incident thereto jurisdiction of matters of which it would not otherwise have cognizance were they independently presented. It contends further that if the court has jurisdiction of the principal action it has cognizance of any ancillary proceeding therein, regardless of the citizenship of the parties, the amount in controversy, or any other factor that would ordinarily determine jurisdiction. The broad language of the Rules of Civil Procedure on joinder of claims and remedies, as well as parties, Rules 18 and 20, is limited by Rules 82 providing that the Rules of Civil Procedure shall not be construed to extend or limit the jurisdiction of the district courts or the venue of actions therein. See Diepen v. Fernow, D.C.Mich.1940, 1 F.R.D. 378. See also Sun Shipbuilding & Dry-Dock Co. v. Industrial Union, D.C.Pa.1950, 95 F.Supp. 50. The conspiracy charge is not ancillary to the breach of contract action. The bankruptcy cases cited by plaintiff are inapplicable.

■ The fifth ground of the motion to dismiss, that plaintiff is barred from bringing this action by Article XVI of the contract, is without merit. That provision absolves the Local and others from liability in any action at law for damages arising out of any interruption of the Company's operations, in violation of the agreement, only if such interruption is neither authorized nor supported by them. The complaint specifically charges the Local with inducing the work-stoppages.

This leaves for disposition defendants' claim that plaintiff failed to exhaust grievance and arbitration procedures for settlement of its disputes, under the contract and as required by the United States Arbitration Act.

■ Prolongation of this opinion, by a discussion of the United States Arbitration Act and its applicability here, is not deemed necessary since the contract does not contemplate submission of plaintiff's claim to arbitration. Article XVI on which defendants rely, particularly the last sentence therein, as compelling arbitration, is entitled "Grievance Procedure". The Article consists of six sections. The first two sections refer to general and special meetings of the Grievance Committee. Section 3 establishes procedure for adjustment of grievances by following five steps therein enumerated. Step 1 provides that "The *aggrieved employe* shall endeavor to adjust his or her grievance with the Department Foreman * * *"; by Step 2 *the* grievance (employe's grievance) proceeds to the Chief Steward; by Step 3 to the Shop Committee; by Step 4 to the Grievance Meeting; and, under Step 5, "If *the* grievance remains unsettled *after the above procedure has been complied with*, the grievance *may* be referred by the Union or the Company to a Board of Arbitrators" etc.

By Section 4, both parties to the contract agree, to expedite grievances, and by Sec. 5, to adjust *such* grievance through the regular procedure herein agreed to, without resort to suspension, slow-down, or stoppage of work. Individuals or groups of individuals *violating* this provision are made subject to disciplinary action. The substance of Sec. 6 is given at the beginning of this opinion. The provision absolving from liability is followed by two short statements, in separate unnumbered paragraphs, as follows:

The above notice shall be given by not less than two members of the Shop Committee.

Should any such *violation* occur, the Union and the Company agree that their exclusive remedy for such violation shall be in accordance with the provisions of this Agreement.

It is the last sentence or paragraph which, defendants contend, compels arbitration under the preceding sections of Article XVI. It is to be noted that the entire procedure is geared to adjust grievances of employees and that it is completely silent as to any possible grievances by the employer. If the last paragraph, on which defendants so strongly rely, includes within its ambit claims by the employer for breach of contract, how will it proceed? It is not an employee and it would be absurd to suggest that it should initiate a grievance or complaint with the shop foreman, yet, under Sec. 5, it can proceed to arbitration only after "the above" procedure has been complied with.

The last paragraph refers to "any such violation". The word "violation" appears previously in Sec. 5 and again in Sec. 6. From the position of that paragraph, it could either form a separate provision of Sec. 6 or, more likely, being the final paragraph, refers to the entire Article XVI. If this be not so, and it is claimed that "any such violation" has reference only to the context of Sec. 6, it is still of little avail to defendants in support of their position, as the violation which Sec. 6 covers is strikes by employees which are unauthorized and unsupported by the Unions and their officials. The crux of plaintiff's claim in the present suit is the fomenting and inciting of strikes by the Unions and officials and a claim for damages resulting from such alleged acts is obviously not covered by the agreement. The parties to the agreement having failed to provide for this contingency in their agreement, neither party can now urge arbitration as a condition precedent to filing of suit for breach of the contract by reason of any acts such as are complained of in the pleading. See Colonial Hardwood Flooring Co. v. International Union United Furniture Workers of America, D.C. 1948, 76 F.Supp. 493, affirmed 4 Cir., 168 F.2d 33; Markel Electric Products, Inc. v. United Electrical, R. & M. Wkrs., 2 Cir., 1953, 202 F.2d 435; Metal Polishers, etc. v. Rubin, D.C.Pa.1949, 85 F. Supp. 363.